# WINDSOR COUNTY.

## February Term, 1839.

---

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE,
" JACOB COLLAMER, } *Assistant Justices.*
" ISAAC F. REDFIELD,

---

Curtis Fowler, Treasurer of the Woodstock & Royalton Turnpike Company *v.* John A. Pratt and Lysander Raymond.

A decision made by this court is an authority where the same point comes again in question in relation to the same controversy.

A turnpike company, under an act of incorporation, allowing said company to erect gates and receive toll, may, from time to time, alter the location of such gates.

A public road cannot be laid on a turnpike road so to take the road from the owners of the turnpike.

There can be no prescriptive right in the public to have the gates remain in any particular place.

This was an action of trespass upon the case for removing the turnpike gate of the Woodstock and Royalton turnpike company, in Woodstock, on the 12th day of March, 1838. The defendants pleaded the general issue, with notice that said gate was a nuisance and obstruction, erected by said turnpike company, without law or right, across the highway in said Woodstock, and that the defendants, as selectmen of said town, after having made and served upon said company

an order in writing to remove said gate, with which order the said company had neglected and refused to comply, removed said gate and nuisance, as well they might, which was the same supposed trespass, &c. The issue was joined to the court, by agreement of parties.

On the trial in the county court, the plaintiff produced the act of incorporation of said company, passed November 6, 1800, which contained, among other things, the following provisions, viz :

The first section constitutes certain persons, &c., a corporation, by the name of Royalton and Woodstock Turnpike Company, for the purpose of laying out and making a turnpike road from Royalton meeting-house to Woodstock court house, in the county of Windsor, in such place or places as said corporation shall choose.

Sec. 2. That so soon as the said turnpike road shall be sufficiently made, and shall be allowed and approved by the judges of Windsor county court, or a committee by them appointed, said corporation shall be at liberty to erect two gates on the same, and that they be, and hereby are, entitled to receive from each traveller or passenger the following rates of tolls, at each of said gates, to wit :

(Here it describes the rates of toll.)

Sec. 3. That the said corporation be, and they hereby are, empowered to erect any additional gate or gates on said road, and to average the toll, by this act allowed, to the respective gates, but they shall receive no additional toll.

Sec. 4. Gives said corporation, or a committee by them appointed, the same powers as selectmen, in laying out and altering their road, with the following proviso, to wit : no pay shall be allowed to any land owner for laying out or altering said road through his lands, where the same shall not be improved at the time of such laying out or altering, or for extending such road to the width of four rods in any place where a highway is previously laid out. And where the road is altered through any person's land, he shall occupy and enjoy the old road in part or whole of damages for such alteration, and the road to be travelled shall not be less than eighteen feet in width.

Sec. 7. Gives a penalty and damages for passing the gates without paying the legal toll, upon which no dispute

arose in this action, and then proceeds as follows, to wit:— " and if any person, with his carriage, cattle, or horses, shall turn out of said road to pass any of the turnpike gates, and again enter the said road, with intent to evade the toll due by virtue of this act, such person shall forfeit and pay three times as much as the legal toll would have been, to be recovered in manner aforesaid, (that is, by an action of trespass on the case,) to the use of said corporation."

It was conceded that said company was duly organized, that their road was laid out and made, and was accepted agreeably to the provisions of said statute, and that the company erected their gates upon said road ; and it was agreed by both parties, that the said turnpike road was made upon the old road from McKenzie's bridge southerly to the court house in said Woodstock, which old road had been an open public road, for fifty years, and that portions of the said turnpike road were laid upon the old road, at different places, from Woodstock to Royalton. It was also conceded that the defendants took away the gate at the time mentioned in the plaintiff's declaration ; and here the plaintiff rested the case.

The defendants then proceeded to prove the defence set up in their special notice. And it was conceded that the defendants were selectmen of said Woodstock, and, as such, notified the said turnpike company, their director and toll-gatherer, to remove the gate or fence across the road, near the dwelling house of Daniel Dana, in said Woodstock, and, after waiting six days, went and took said gate from off the hinges and carried it away and left it beside said road, near the toll-house. It was agreed by the parties, that when said turnpike road was made and accepted, as before mentioned, the company erected two gates on said road, one in Royalton, three or four miles from the north end of said road, and the other in Pomfret, at Eleazer Winslow's, about four miles from the south end of said road, and that said second gate remained at said Winslow's, about seven or eight years, and till the 1st day of January, 1839, when the same was removed from said Winslow's and placed in said

Woodstock, where the company then erected their toll-house, about fifty rods southward of the bridge at McKenzic's, and northward of where the new road, hereafter to be mentioned, comes into the turnpike road, and about fifty rods south of where the old Barnard road then came into the turnpike road, and was placed and erected across said turnpike where the same was laid upon the old road, where said gate stood until the first day of January, 1832. Also, that there was an application to the supreme court at Montpelier, to appoint a committee to lay out a road from Montpelier to Woodstock court-house or Woodstock green; that said court appointed such committee, who laid out a road from Montpelier to Woodstock green, passing southwardly and coming into said turnpike road south of the said toll-house and gate in Woodstock, and north of where said gate stood at the time when it was removed by the defendants.

This road, thus laid out by the committee, was made and opened, and the survey recorded, and was used as a public road before the gate was erected at the place from which the defendants removed it. The said road from Montpelier to Woodstock green was laid out and recorded, May 24th, 1835, and has been an open travelled road for two years; . and was laid on the said turnpike road from the place . ' where it came into it, to Woodstock green. The said gate, so removed by the defendants, was the only gate then on said turnpike road, and said company took, at that gate, the same toll to which they would have been entitled at one of two gates, and exacted the same toll from persons travelling the new road from Woodstock to Barnard, as from those travelling the turnpike road from Woodstock to Barnard. It was also agreed, that the ground at any point north of the intersection of said new road with the turnpike, to the distance of one mile north of the place where the old Barnard road comes into said turnpike road, afforded as good facilities for the erection of a gate and toll-house, as the place where said gate stood at the time when it was removed by the defendants.

The plaintiff adduced testimony showing that the said new road was opened in November, 1836, and that, after it was opened, travellers, going to the north on the turnpike, went up the new road till they came to the old Bar-

nard road and then turned down the old Barnard into the turnpike road, thereby shunning the gate, and that travellers to the south, on said turnpike road, in like manner shunned the gate by turning up said old Barnard road to said new road and going on that to said turnpike road. The plaintiff also showed that, as early as January 1st, one thousand eight hundred and thirty two, a winter road was opened by individuals, without any survey, over the same ground where said new road now is, leaving said old Barnard road where said new road leaves it, and coming into said turnpike road where said new road intersects the same, and said winter road was continued during said winter only. Whereupon, the said turnpike company removed their said gate in Woodstock to a place southerly of where the said new road intersects said turnpike road. In the spring of 1832, and after said winter road ceased to be used, the said company removed said gate back to the place where it previously stood, where it continued till November, 1836. From November, 1836, to March, 1838, there was no gate upon said turnpike road.— In March, 1838, the gate, which the defendants removed, was erected by said company, about one mile northward from the south end of said turnpike road, where it stood till so removed by the defendants.

The old Barnard road, from where the new road leaves it to where it enters the said turnpike, had been an open, public road for fifty years before said new road was opened.— For the purposes of the decision of this action, in the county court, the parties each objected to the relevancy of the testimony adduced against him by the other, but agreed that the foregoing facts, if legally admissible in this action, were to be considered as proved; and upon the said facts the county court rendered judgment for the plaintiff.

The defendants excepted.

The subjoined diagram shows the position of the several roads, and of the gates, as mentioned in the foregoing case:

Fowler
*v.*
Pratt, *et al.*

Windsor,
February,
1839.

Fowler.
v.
Pratt et al.

*T. Hutchinson and E. Hutchinson*, for defendants.

I. The turnpike company, by the act of incorporation, acquired the right to lay out and make a road, leading from Woodstock to Royalton, in such a place, or on such a route, as they should choose, and to erect two gates and receive such tolls at each as are prescribed in their grant. They were bound to keep their road in repair, and for the making and repairing the road, their tolls are their stipulated and legal compensation, and neither any other person, nor the public, has any right to place any gate upon that road. Yet this road, when made, is not a private road. It is a public highway, and the right to erect gates and receive toll is merely a mode of compelling travellers to pay for the making of this public highway, and keeping it in repair. See to this point *the Commonwealth* v. *Wilkinson*, 16 Pick. R. 176. Every individual in the community has as good a right as the members of said corporation have, to travel upon and over this road free of toll, where there is no gate, upon paying the legal toll where there is a gate.

The company have no exclusive privileges but what are comprised in the above, unless we except what is said about additional gates. Having made that road, upon keeping it in repair, they can keep up their gates in their proper places, and collect tolls and prevent others from doing it, upon the same road. But the right of the public to make a free road on every other route from Woodstock to Royalton, where the necessities or conveniences of the public require it; and to make all necessary cross roads, and roads coming diagonally into the turnpike road, remains unimpaired by the grant.— For all rights, not expressly given to this company, or necessarily implied from what is expressly granted, still remain in the public, and there is no expression in this grant tending to curtail the right of the public to make all other roads they deem necessary or useful.

This company were not obliged to accept that grant, nor make their road. But, accepting it, they took it as it was, subject to all the remaining rights of the public, and to all the general laws then in force, from which this grant did not shield them. The same statute, under which the defendants have proceeded, was in force when the company obtained their grant, and has been in force ever since. See the Re-

# 376

CASES IN THE SUPREME COURT

Windsor,
February,
1839.
———
Fowler
v.
Pratt et al.

vised statutes of 1797–8, pages 446, and 454. To these general principles we cite *Charlestown bridge* v. *Warren bridge*, 11th Peters' R. 544 and 551,. Also, in judge Story's opinion on page 600, and 634–5–6. Also, *Sprague* v. *Birdsall*, 2 Cowen's R. 419. Also, *Wales, Treasurer*, v. *Stetson*, 2 Mass. R. 143. *Petitioners* v. *Commissioners*, 10 Pick. R. 270. *Tripp* v. *Frank*, 4 T. Rep. 666.

II. The company originally had a right to place their two gates where they pleased on this road. But we contend, that, having once placed them, they had no right to remove either of them. *Griffin* v. *House*, 18 Johns. R. 397. Also the *State* v. *Norwalk & Danbury Turnpike Company*, 5 Conn. R. 2d series, 163.

III. Upon the well settled principle that an incorporeal right may be acquired by the uninterrupted exercise and enjoyment of such right for fifteen years or more, and may be lost by abandonment and permitting another to exercise and enjoy it, or one contrary to it, for a similar period, the company, having moved their gate from Pomfret to Woodstock, and erected it where their toll-house was long ago erected, and been permitted to keep it there twenty eight years, as the case shows, have acquired the right to keep their gate there, and have lost the right to move it back to Pomfret; and the public, on the same principle, by their uninterrupted use of all other parts of said road, during the same period, have acquired the right to travel upon said road wherever there has been no gate all this time, and that without the incumbrance of a gate or the payment of toll. The company never had a right to exact toll at any place on their road where there was no gate with the rates of toll posted up. And, when the gates were once located, all persons had a right to calculate accordingly, in the purchase or sale of farms, or the erection of buildings, or in arranging their gateways into their inclosures.

We contend that the public also had a right to calculate what roads were rendered necessary by the said turnpike road, and make, establish and repair the same. 2 Barn. & Adol. 783, in 22 Com. L. R. cited in 11 Peters' R. 544.

With regard to fifteen years' occupancy, we cite *Mitchell* v. *Walker*, 2 Aik. R. 266.

IV. The company had originally the right to erect gates

in addition to the two  first named, averaging the toll at the <span></span> WINDSOR, February 1839.
several gates so as to receive no more, at all of  them, 'than
they had a right to receive at two only.  This right was forced Fowler v. Pratt et al.
into  the argument in. the  court below to  justify the pla-
cing  of the gate where it was when the defendants removed it.
To this we present three  answers,  each of  which is deemed
conclusive.

1.  This is not a gate in addition to  the two gates allowed
by  the grant,  for  the case shows that this was then the only
gate upon the road.

2.  This was  not set up nor  kept up as an additional gate
with diminished rates of toll, as  the  grant in such a case re-
quires,  but as one of two gates only, and the company exacted
of travellers the full toll, as at one of the two gates first named
in the grant.

3.  The company have  never  exercised  the right,  given
them by that grant, of erecting more than two gates, but have ⁻
abandoned it altogether for these almost forty years,  during
all which period the public have, several times over, acquired
the right  to travel,  as before suggested,  without the trouble
⁻of gates or paying toll,  upon all parts of said road which have
been free from  gates.   And  the  company have no right, at
this late period, to erect a gate  at any new place upon said
road,  much less have they a right-so to  place their gate as to
intercept the travel coming from a distance upon a large free.
road.

, If we are correct in this, that the company had no right to
place the gate where it was when the defendants removed it,
then, any person had a right to demolish it.   But these de-
fendants have not acted  as wanton  individuals in what they
have done.   They have acted officially, as selectmen, and in
obedience to a general public law,  which was in force when
the company  procured their grant,  and  has  been in force
ever since.   Thus acting,  they  adjudged this  gate to be a
public nuisance, and gave a regular notice for its removal.—
The company  disregarding  that  notice,  the  defendants
proceeded and removed it.   9  Wend. R. 589, in judge Suth-
erland's opinion.   Also, 609–10, in Senator Edmund's opin-
ion..

The case decided some years ago, in this county, in which
this same company were plaintiffs, has not been reported.—

That case arose, not between the company and the public, but between the company and an individual; and the court decided, that, as such individual was liable to pay the toll demanded of him, it made no difference with him where the gate stood, when the toll was demanded.

*Williams & Tracy, and C. Coolidge*, for plaintiff.

I. The corporation had the right to maintain their gate in the place from which the defendants took it away, because the grant of the power to erect gates is not, in the act, restricted as to either their original localities or change of localities. The defendants, admitting that the grantees might place their gates, in the first instance, wheresover they should elect, nevertheless insist that the power, having been once exercised, was exhausted; in other words, that where the gates were first erected, there, if any where, they must always stand. This position, the plaintiff denies.

1. From the absence of all restraining terms in the charter, the implication is as strong as a direct enactment, that the legislature did not intend to restrict the grantees in this particular. Had such been their purpose, it would have been expressed.

2. The legislature must be presumed to have granted, with the franchise, the powers necessary to render it valuable to the proprietors, and, through them, available to the end of enhancing the safety and ease of the public travel. On no other ground could the mutual interests of the grantees and the public rest. If the gate be confined permanently to the place first selected, it is plain that the revenues of the franchise might be wholly extinguished, and yet the corporate duties and liabilities remain in force.

But the defendants, aware of this consequence, and seeing the mischief it would bring with it, say that the act gives a remedy for evasions. Such a remedy would, indeed, be worse than the disease. The gate is designed as a barrier for the detention of the traveller until the rightful toll is paid ; and the proprietors are not required to pursue delinquents by *hue and cry*, or to build watch-towers and employ spies.

The defendants, in support of their construction of the grant, cite *Griffin* v. *House*, 18 Johns. R. 377. That case will not avail them. There, by the charter, the gate was to be placed near to the Massachusetts line. Having been

moved from its position, and re-located 2¾ miles from the line, the court held that it was not *near*, within the act; and this was all they decided.

*The State* v. *Norwalk Turnpike Co.*, 5 Conn. R. 157, also cited by the defendants, fails to sustain them. The only point there raised, which bears any relation to the present case, arose upon the import of the words of the charter. The grantees were empowered to " erect and establish," and on the construction of the word " *establish*," judgment was rendered against the company.

II. It is contended by the defendants, that the corporation have no right to place a gate on that part of the turnpike, which covers the old highway. It is claimed that a turnpike is a public highway, and that the easement of the old way remains; in support of which the cases in 2 Mass. R. and 16 Pick. R. are produced. These propositions, in their qualified sense, may be safely allowed. A turnpike is a public highway; but it is not a *free* way. And, unless free, the principle, or theory, does not help the defendants. So, too, it may be spoken of as an easement, omitting all disputation about the appropriateness of the term in this connexion. But this easement is subjected to the right of the corporation to demand tolls for the use of the road. If, however, the corporation may not lay their road upon an existing highway, the question is at rest. As to this, the-plaintiff says,

1. That the legislature has power to authorize a turnpike corporation to lay their grant upon an existing highway. It has been, again and again, exercised and maintained. No case denies it. The charter of this company contains a grant, by the strongest implication, of the right to so lay their road.

2. That, if the legislature do not expressly or by any implication arising from the terms employed, bestow upon the grantees the authority in question, still they may lawfully exert it, as necessary, in many instances, to the execution of the main purpose. Once admit the right to engross the former way, and the right to set up gates thereon springs forth whenever the necessity for its exercise, as in the present case, appears.

III. The right, asserted by the plaintiffs, is deducible from the power to erect additional gates and average the toll.

There is no condition precedent to the exercise of this right; and if more than average toll be taken, still, as the gate would be lawfully there for a just measure of toll, it cannot be a nuisance. But as the gate, removed by the defendants, was the only one on the road, they may urge that this could not be deemed *additional*. Very little weight can be attached to an objection which assumes that the erection of the gate in question, as one of three gates, would be lawful, while, as one of two, or as one alone, it would be illegal.

IV. The (unreported) case of the *Treasurer of the Royalton and Woodstock Turnpike Co.* v. *Joel Hutchins*, determined in the supreme court, for this county, Feb. T. 1833, is decisive in favor of the plaintiffs, on all the points here made.

The fact that the new road, on the line of the winter path, has been since regularly laid out and opened, does not affect the right of the company. The public have thereby acquired no right, as to the use of the *turnpike*, which they had not before. They may travel on the new road to its intersection with the turnpike, but there their right ends. The committee had no power to extend the new road into Woodstock by laying it upon the turnpike. *W. Boston Bridge* v. *Commissioners of Middlesex*, 10 Pick. 270. Had the new road been laid parallel with the turnpike, not intersecting it, the case would be. one to which the doctrine of the Warren Bridge case might possibly apply.

WILLIAMS, C. J.—In this case the court are called upon to investigate a question, which was presented to their consideration and decided in this county, in March, 1833, and in relation to the rights of the same corporation, whose treasurer now brings this suit. The case is not reported, but it cannot have escaped recollection that the points, now raised, were then raised, discussed and decided.

The question is, whether the Royalton and Woodstock Turnpike Company, having once erected a gate or gates on their road, have a right to remove them, or whether the gates must be considered as fixed and established, however important it may be to the interest of the corporation to change their location.

There is nothing in their charter which requires that the gates should be thus fixed, or prohibits the company from removing them. On the contrary, they were authorized to erect any additional gates, averaging the toll, and not receiving any additional toll.

The power of thus removing gates has uniformly been exercised by many, if not all, the turnpike corporations in this state, and, without this power, their grants would be rendered in many cases wholly inoperative. And moreover the right so to do was recognized by this court in the case of the *Treasurer of the Royalton and Woodstock Turnpike Co.* v. *Hutchins,* decided in March, 1833, and before referred to. If there are any decisions of any of the state courts which conflict with the decision made in the case mentioned, that must govern, unless it was manifestly wrong. In the case of *Griffin* v. *House,* 18 Johns. R. 397, the question before the court was not whether the company might remove their gate, and, in the remarks made by the court, they conceded that a gate might be removed if there was a strong and manifest necessity to warrant it. In the case from 5 Conn. R. New series, *State* v. *Norwalk and Danbury Turnpike Co.* 163, the court lay stress on the words of the act " to erect and establish gates", &c. It would be very desirable to find the decisions in the courts of the other states agree with ours, and they will always receive a respectful attention, and we should feel a strong disposition to coincide with them, where the same question has been considered and decided, yet we should not overrule an adjudged case in our own courts, because a different decision could be found in the reports of other states.

It would not be very surprising if this subject should be viewed differently in different states, but we see nothing at present to change the views which were formerly taken in relation to this turnpike. By the grant the company had a right to make the road between the *termini,* and erect gates thereon, and demand and receive toll of those who passed them. Every individual had the right to travel on the road without paying any thing therefor, unless he was intercepted by a gate. It is so far a public highway, that the company are liable to an indictment for not keeping it in repair, although not expressly made so in the grant, and individuals would also be liable to an indictment for a nuisance thereon. But for

all damages done to individuals, by reason of its insufficiency or want of repair, the company are liable. It has sometimes been contended that a grant of a turnpike gives an exclusive right to make a road between the *termini*. It is not, however, so, unless expressly so declared in the grant. A public highway, or even another turnpike, it is said, may be granted so near to the one made as to injure or render valueless the former grant, if the public good so require, but it has never yet been decided or contended for, except in this case, that when a turnpike road or toll bridge is made by stockholders, by virtue of a grant from the legislature, either a public road or another turnpike can be laid directly on the road or bridge thus made, so as to make it a public road or bridge, or to transfer the latter to the proprietors of the former. The defendants are, therefore, not protected by their character as selectmen, nor can they derive any benefit from the laying out the road by the committee appointed by the supreme court, nor by the vote of the town.

Much has been said on the doctrine of prescription in the present case. But we cannot see its application, nor can I readily perceive, who are intended in the argument by the *public*, as acquiring or losing any rights. A road may be said to be dedicated to a public use, and the evidence of this may be either by grant or prescription. In this case the grant by the legislature to the Royalton and Woodstock Turnpike Co. has been accepted, and is now used and enjoyed. There is no obscurity in the grant, nor any difficulty in interpreting it. The legislature have not undertaken to resume any thing granted, nor have the company surrendered any thing which they then acquired. If they ever had the right to remove their gates, they still have it. The road, as made and surveyed, still belongs to the company. They are required to keep it in repair, and are answerable for any damages which may arise in consequence of its being out of repair. It is insisted, however, that there is a right in individuals to make use of all the road, if they can escape the gates, and that the right to do so is established by usage. It might be urged with as much propriety, that, because the company, until the year 1835, could exact tolls of all who came on the Barnard road and entered the turn-

pike, they have, therefore, acquired a right so to do, and that the removal of the gate was only to secure the enjoyment of that right.  The right of the company is to exact toll of all who pass their gates, and it is the right of individuals to travel the road without being subject to any charge, except when they pass the gate.  This arises from the nature of the grant, and the doctrine of presumption and prescription is wholly inapplicable.

It is objected, that this power may be abused.  But because a power granted may be abused, it is not to be said that it is not granted.  If it was an improvident grant, this court cannot, on that account, destroy it. . We do not see, however, that the power has been abused, or that it was improvident.  Grants of turnpikes have not been frequent of late.  They were made at an early day when there was some necessity to have the aid of individual exertions and property to secure roads any way tolerable.  Those, who embarked in them, have not generally found that they made a very profitable investment of their funds.  They should enjoy all that was given them by their charter, without any attempt to evade or destroy their grant, and if subtlety and ingenuity are taxed to enable people to use and travel the whole length of the road, passing round the gates in a free and public road, leaving the company at the expense of keeping it in repair, if they cannot be met by a corresponding ingenuity and subtlety, they may at least be rendered ineffectual by a legitimate use of the powers granted.  We are not to suppose, however, that there will be flagrant abuse of the rights or powers which appertain either to the towns or companies.  When it does happen, the parties will undoubtedly find a remedy.  It is not for the court to suggest one.

. I have a word to say in relation to the decision in the case of Hutchins.  I was not present when the opinion of the court was given, and, therefore, cannot know what was said by the learned judge who delivered the opinion of the court, nor have we been favored with the copy of that opinion.  But, from his known accuracy and intelligence, it is impossible that he should have placed the case on the grounds supposed by the defendants' counsel.  The question then to be determined, which was argued, and which was previously argued in the county court, was as to the right of the company

WINDSOR,
February,
1839.

Fowler
v.
Pratt et al.

to remove their gates. That right was recognized and established, and of course conflicts directly with the claim now set up that the gates cannot be changed, and is decisive that no right is acquired, by usage, prescription or by the doctrine of presumption, to have them remain in the places where they have been erected. If they can remove the gates, it can make no difference whether it is done to intercept travel on a path made by individuals or laid out by authority. I was present when the case of Hutchins was argued and decided, but I left the court before the decision was declared.

The judgment of the county court is affirmed.