SAMUEL BLODGETT *v.* TOWN OF ROYALTON.

[Same Case, 14 Vt. 288, 16 Vt. 497.]

When a new road has been laid and worked in a town, the discontinuing the
   old road, by the selectmen, and the leaving the new road open for travel,
   and thus compelling the travel to go upon the new road, are acts so une-
   quivocal in their character, and so inconsistent with any other rational in-
   tent of the selectmen, than that the road shall be an open highway, as to
   be *legitimate evidence* that the road has been opened by the town and de-
   voted to public use, so as to make the town liable for any damages arising
   from the insufficiency, or want of repair, of such road.

And it makes no difference that the fences across the new road were first
   torn down, and the road thus opened, by some other person, if the select-
   men, after learning the fact, and after shutting up the old road, suffer the
   travel to go upon such new road, without providing any other place to
   travel.

TRESPASS ON THE CASE  for damages to the plaintiff's horses and
carriages, resulting from the insufficiency and want of repair of a
highway in Royalton.   Plea, the general issue, and trial by jury.

On trial it appeared, that, at a session of the Supreme Court at
Chelsea, in the county of Orange, in March, 1837, a highway, duly
surveyed and laid out by a committee appointed by that court, was
established in the towns of Royalton, Bethel and Randolph.   In the
summer of 1837 the town of Royalton appointed a committee to let

Blodgett *v.* Royalton.

out the making of that portion of said highway within their limits, and they let out the same in sections, which were all completed, and accepted by the said committee, in November, 1837. The selectmen of the town then examined the road, but concluded not to open it for travel that year,—the fences then being across the road ; but the fences were, by travellers, taken down, and the public travel went on to the road, that autumn, and has continued to go there ever since.

In April, 1838, the selectmen of Royalton were called out, on a petition of the inhabitants, to discontinue the old road, of which the new road was an improvement, and a majority of the selectmen decided to discontinue it, except a small part at the south end, which was reserved for the use of the inhabitants on that part, and thereupon the old road was fenced up by the inhabitants and land owners thereon, and has never since been repaired, or used, as a public highway, though travellers, and the plaintiff's stages, have occasionally passed that way, by taking down the fences, when the new road was out of repair,—and especially in the spring of 1838.

The selectmen did not deliver any certificate of the discontinuance of the old road to the town clerk, for record until April, 1839 ; and they have never left with him any certificate of the opening of the new road. When the majority of them, in April, 1838, decided to discontinue the old road, a land owner, who had fenced up the old road, finding his fence taken down by travellers, or stage drivers, applied to one of the selectmen, who informed him that the road was discontinued ; whereupon he put up and kept up his fence.

In the spring of 1838 the selectmen, with the other highway survey bills, made out and delivered one to one Fowler, a highway surveyor ;—the bill not describing the roads in his district, he soon afterwards applied to one of the selectmen, who informed him that he must lay out the taxes in his bill on the said new road ; which he did that season.

At the May Term of Windsor county court, 1838, an indictment was found against the town of Royalton for the insufficiency and want of repair of the said new road, and, at the November Term, 1838, a fine was assessed therefor on the town by the court, which

6

was duly collected, and was, under the direction of an agent appointed by the court, laid out in the repair of the road in 1839 ; and the road has ever since been maintained by the town.

The plaintiff gave evidence tending to prove that the said new road became much out of repair, by deep ruts, in November and December, 1837, and that, in running his stage thereon, one of his horses had a leg broke in December, 1837, by reason of the said want of repair ; that about the middle of May, 1838, another of his stage horses was badly injured, and another in June, 1838, and that his carriages were also injured,—all by reason of the insufficiency of the road.

The defendants gave evidence tending to prove that the plaintiff's stage driver, in November, 1837, took down the fence across the new road, and drove the plaintiff's stage through on the road.

The defendants requested the court to charge the jury,—1, That the plaintiff could not recover, because no certificate of the opening of the new road had ever been made and recorded ; 2, That the discontinuance of the old road could have no effect until recorded, in 1839 ; 3, That if the plaintiff's driver took down the fence across the new road in 1837, before the selectmen had opened the road, and so opened a passage for the travel, and for heavy teams, on to that road, whereby the same had become deeply rutted, and whereby the plaintiff had suffered damage, he could not recover for such damage.

The court charged the jury that the opening a highway, so as to render the town liable for damage for its insufficiency, could not be produced by the act of a private individual. That it must be by the certificate of the selectmen, duly recorded, or by some other act of the selectmen, unequivocal in its character, and clearly inconsistent with any other honest intent, than that the road should be an open highway ; or there must be some corporate act of the town to the same effect. That, this road being in fact in use in April, 1838, the decision of the majority of the selectmen to discontinue the old road, and the fencing up the same, as shown, was such unequivocal act, which had never been repudiated, but had ever since been conformed to and sanctioned by the town, in maintaining the new road as the only main and stage road. But that the town were only lia-

ble for such damages as had happened to the plaintiff, from the insufficiency of the said road, after the decision of the selectmen and the fencing up of the old road in April, 1838; and that for such damage the town was liable, regardless of who first took down the fences on the new road.

The jury returned a verdict for the plaintiff. Exceptions by defendants.

*T. Hutchinson* for defendants.

We contend, that, if the discontinuance of the old road would be equivalent to a record of the opening of the new road, (which we do not admit,) surely a decision of the majority of the selectmen, in the spring of 1838, to discontinue the old road, which decision was not put upon paper, nor upon record, until 1839, could have no such effect.

Hence we contend, 1, That the town are not liable for damage done before the opening of the new road by the record required by the statute; and 2, That no substitute arises from the proof about discontinuing the old road,—especially in favor of the plaintiff, who was an inhabitant of the town.

3. We contend that the instructions of the court to the jury, and their refusing to instruct as requested, gave the plaintiff the full benefit of his own wrong,—himself, by his teamster, opening the new road, and causing all those ruts, and the want of repairs, of which he complains.

*Tracy & Converse* for plaintiff.

That the charge to the jury was correct was virtually decided by this court, when the same case was before them at the Feb. Term, 1842. [14 Vt. 288.] The decision then made is based upon the clearest principles of reason and common sense, and is sustained by the most obvious considerations of justice and public policy.

That the evidence admitted was such as tended to show a recognition of the road as a public highway by the town, and by its officers, appears to us incontrovertible.

If any thing, short of the record of the selectmen, could be evidence of recognition, that described by the judge in his charge was such.

Blodgett *v.* Royalton.

The opinion of the court was delivered by

HEBARD, J. This case has once before been to this court, and so far as this question was then considered by the court, it must be regarded as settled. The defendants seek immunity from the liability imposed upon towns for damage sustained by individuals by reason of the insufficiency of a road, upon the ground that the selectmen had not caused a certificate of the opening of the road to be recorded in the town clerk's office. And this brings up the inquiry, whether there is any other way in which this liability can be fixed upon a town. If this was a road that the town of Royalton was " liable to keep in repair," then the town, by the statute, would be " liable for damages happening through the insufficiency, or want of repair, of the road." It has been repeatedly held that a public highway may be created by adoption, and, by such adoption and use of it, the owner loses his right to fence up and control the use of the land. And when this court had this case under consideration before, it was expressly so held by the court. If that point is established, it only becomes necessary to examine whether the charge of the County Court upon this point was a departure from this rule.

The court charged the jury that " the opening of the road could not be effected by the act of an individual,—but must be by the certificate of the selectmen duly recorded, or by some other *act* of the selectmen, *unequivocal in its character*, and clearly inconsistent with any other honest intent, but that the road should be an open highway ; or there must be some corporate act of the town to the same effect." This charge of the court must be correct, if any thing short of the record is to have the same effect.

But it is said that there was no such *unequivocal act* of the selectmen. The case finds that this road, *de facto*, was laid open in the fall of 1837, and was then travelled, and was afterwards continued to be open and travelled; and that in April, 1838, the selectmen, *de facto*, discontinued the old road, and caused it to be shut up, leaving no open way for the travel to pass, except upon this new road. And the case farther finds, that, by direction of one of the selectmen, a portion of the highway tax was laid out upon this new road in June following. These acts could hardly be called *equivocal*.

Blodgett *v.* Royalton.

There could have been no different views entertained of them by those who witnessed them. If this is so, if the selectmen intended, by shutting up the old road and permitting the new road, after having made it, to remain open, and become, as it in fact did, the thoroughfare for the public travel, and the town acquiesced in this proceeding and arrangement of the selectmen, I think the town may with propriety be said to have adopted this road, and to have become liable to keep it in repair.

There is one farther objection to the charge of the court. The court instructed the Jury "that the town was liable only for such damages as had happened to the plaintiff from the insufficiency of said road, after said decision and fencing up the old road, in April, 1838, and that for such damage, the town was liable, regardless of who first took down the fences on said new road." The defendants offered testimony tending to prove that the plaintiff's stage driver took down the fence on said new road in November, 1837, and drove the plaintiff's stage through on said road. This has no tendency to change the character of the transaction. It was not the first taking down the fence, but it was the shutting up the old road and permitting the new road to *remain open*, that was characteristic of the intention of the selectmen. The fence might as well have been taken down by the plaintiff as by any other person. When the selectmen shut up the *old road*, and thereby compelled the travel to go upon the new road, and left that open, and made no other provision for the public, for all the purposes of this inquiry it became their act, and the town, by acquiescing in it, have adopted the road and made it their own.

Judgment affirmed.