### Stevens *v.* Nashua.

If land is dedicated to the public use and accepted, it cannot under our statute become a public highway until it has been used as such for twenty years.

Where there is a dedication to the public use by the owner of land, twenty years use of it as a public highway is conclusive evidence of an acceptance, and where there is no such dedication, then such use for that term of time, if continuous and adverse, will be conclusive evidence of a right so to use such highway, not only as against the land owner, but also as against the city or town, to be charged with its maintenance and repair.

In the most frequented parts of our towns and cities, where the public convenience requires it, side walks for foot passengers may be laid out as a part of the highway, or the right to use them may be acquired by twenty years use for the purposes of a side walk, the same as to any other part of the highway, and such side walks must be kept in good repair suitable for the travel passing thereon.

Review by the defendant of an action on the case, in which, on the

former trial, the plaintiff recovered $925.75 damages. The plaintiff has since married John P. Brown, who comes in and prosecutes the suit with her. On trial by the court it was agreed that the only question of fact should be whether the injury complained of was received on a public highway in Nashua, such as is described in the declaration, which alleged that the injury was caused by the insufficiency of Main street, "near the junction of the westerly boundary line thereof with the northerly boundary line of" Water street.

The following facts are found by the court: Main street is the principal business street of Nashua, and extends southerly from the river, commencing at the bridge. Water street leads out of Main street westerly, and at about right angles. The injury was received at the corner of Main and Water streets. There is a side walk about eight feet wide extending southerly for about 250 feet from near the bridge and on the westerly side of Main street to the corner of Main and Water streets. This side walk is connected in use with the side walk to the south of Water street, which extends southerly on the westerly side of Main street. The accident happened while the plaintiff was walking from the side walk on the north towards the side walk on the south of Water street, and within about four feet of the end of the side walk which lies to the north of Water street. There is a stone post set at the corner of Main and Water streets in a range with the outside of the side walk on Main street, and about five feet southerly from the line of the building on Water street. The accident happened between this post and the corner of the shop, which stands on the corner of Main and Water streets.

The highway over which Main street is now travelled, was laid out in 1798. There was no side walk nor any fixed limit to the travelled part of the highway at this place until the buildings on this corner and towards the bridge were built in 1835. Soon after that, and for more than twenty years before the accident happened, a side walk or travelled foot path in the same place, where the side walk now is, has been constantly used by the public for foot passengers, but not for carriages or horses. The construction has been changed from time to time, it having been at first earth or gravel, and more lately plank or brick. This walk has during that time been connected in use with a similar walk on the same side of Main street, extending southerly from Water street, and has been separated by a line of posts and edge stones from that part of the street, which has been used for carriages.

This side walk is not within the limits of the highway as originally laid out, and it has never been maintained, repaired or accepted by the town or city; but was constructed and has been maintained by the owners of the adjoining buildings and land, and has been used by them for the convenience of approach to their land and buildings as is customary in the business parts of other cities. The side walk and the spot where the accident happened are part of the land conveyed by the manufacturing corporation to Reuben Goodrich, in 1832, who set up the stone above mentioned and another before it in the same place as the corner bound of his land.

This side walk and the spot where the accident happened had been

used by the public as a side walk and in connection with the highway without interruption for more than twenty years before the accident happened, and there was no other side walk on the westerly side of Main street at that place nor any way of passing across Water street from the side walk to the other side walk on the same side of Main street without passing over the spot where the accident happened. There is an awning over the walk on Main street, but it does not extend over the spot where the accident happened.

Formerly there was a roof over the walk at the corner supported by posts near a foot in diameter; at that time the walk under this roof was gravel. There has been nothing at any time to obstruct the public use of the side walk by all who had occasion to walk on that side of the street. The side walk is bounded by shops and stores used in different branches of trade. The owner of the buildings on the corner of Main and Water streets has passed round the corner and over the spot where the accident happened in going to his dwelling house and stable, and the public who had occasion to pass round the corner from Main into Water street, have passed in the same way.

On these facts the court held and decided that the injury was received within the limits of the highway; to which the defendant excepted.

The questions arising in the foregoing case were reserved and assigned to the determination of the whole court.

*Morrison, Stanley & Clark* and *Barrett,* for plaintiff.

*G. Y. Sawyer & Sawyer Jr.* and *Stevens,* for defendant.

SARGENT, J. The place of the accident, as described in the case, and the streets mentioned, will be substantially represented by the following diagram:

The dark lines represent Main and Water streets as originally laid out. *a* is the stone post, the corner bound of land deeded to Goodrich in 1832, which land was bounded east by Main street and south by Water street. The spot *c* shows where the accident happened. The shop in the corner was set back 8 feet from Main street, and 5 feet from the line of Water street, as originally laid out, and these spaces have been used by the owner of the corner lot and by the public as side walks.

The case finds that this space on the west of Main street had been used as a side walk in connection with a similar walk on the same side of Main street and extending south from Water street, for more than twenty years by the public without obstruction or interruption, and that there was no other side walk but this on the west side of Main street, and no way to get from this walk on the north of Water street to that extending south from Water street but by passing over the place of the accident. That raises the question whether the side walk is a part of the highway, or may be so, and whether it is subject to the same law and rules, whether it can be laid out, as a part of the highway, by our statute, and whether it may become a highway by dedication and acceptance, or by prescription, the same as the carriage way.

*Hall* v. *Manchester*, 40 N. H. 415, is an authority directly in point, that where the wants of the community and the necessities of business require such side walks for the protection and convenience of the foot passengers, in the most frequented parts of our towns and cities, they may be laid out as a part of the highway and must then be kept in good and sufficient repair suitable for the travel passing thereon. *Noyes* v. *Ward*, 19 Conn. 250.

So a highway regularly laid out may be widened by dedication and acceptance or by prescription. Where a street has been used and built up along a particular line, and the adjoining owners have acquiesced in the line so built upon, they will not be permitted to deny the effect of their acts as a dedication, and contract the lines of the street on the ground that by so doing they make them conform to the original survey and lay-out of the street. *Smith* v. *The State*, 3 Zabriskie 130. So, if the owner of the soil laid out an alley for his own convenience, but permitted the public to use and repair it, it became a public highway. *Gamble* v. *St. Louis*, 12 Missouri 617 ; *Denning* v. *Roome*, 6 Wend. 651 ; *Angell on Highways*, sec. 143, and authorities cited.

The evidence stated in the case was competent as tending to show a dedication of this side walk by the owner of the land to the public use. The weighing and balancing the testimony was for the jury or the court trying the facts. But the case expressly finds not only that this side walk was not in the limits of the highway as originally laid out, but that it had never been maintained, repaired or accepted by the town or city. This raises the question whether a highway can be made public by dedication and twenty years uninterrupted use by the public, without some acceptance by the city or town to be charged with its repair. Suppose there has been such a dedication to the public, or such an acquiescence in such public use, as that the public have acquired the right

of way, as against the land owner, can the way be made public so as that the city shall be chargeable for its repair and maintenance, and for injuries received upon the same, unless the city have adopted or accepted, or in some direct way recognized it as a public highway?

This question was raised in Massachusetts in *Hobbs* v. *Lowell*, 19 Pick. 405,. where it was held that a highway might be established there by a dedication on the part of the owner of the soil and an assent thereto on the part of the public, and a *quaere.* is also raised whether the assent of the town or city is necessary to an effectual dedication, and, if necessary, in what manner it is to be given or withheld. But it did not become necessary, in the opinion of the majority of the court, to settle that question. But the matter was regulated by statute in 1846, in which it was provided that no way heretofore opened and dedicated to the public use, and not already become a public way, shall become chargeable upon any city or town of that commonwealth unless such way should be laid out and established by the city or town in the manner prescribed by the statute of that commonwealth. Statutes of Mass. 1846, ch. 203 ; *Bowers* v. *Suffolk Man. Co.* 4 Cush. 341.

In Vermont it has been held, that, although the acceptance of the town may be shown by their acts, as by putting the road into the rate bills of the surveyor of highways as a public road on which the highway tax is to be worked, and that the town would thus become liable to the traveller for the insufficiency of such road, yet that the road must either be opened by the selectmen according to the provisions of their law, or that they must have adopted it as a public highway before the town will be liable for damages caused by defects therein. *Blodgett* v. *Royalton,* 14 Vt. 288, and cases cited on page 294 ; *Folsom* v. *Underhill,* 36 Vt. 580.

In New York it is held that such ways must be accepted by the town before they become highways. *Oswego* v. *Oswego Canal Co.,* 2 Selden 257 ; *Badeau* v. *Mead,* 14 Barb. 328 ; *Clements* v. *West Troy,* 16 Barb. 251, in which last case it is held that the only way in which a highway dedicated to the public could be accepted or adopted by the town was by laying it out according to the provisions of their statute. And in Virginia a road dedicated to the public must be accepted by the county court on its records before it can be a public road. *Kelley's Case,* 8 Grattan 632.

In speaking of this subject of acceptance, Angell in his work on Highways, sec. 159, says : "In the United States the cases in which this point has been directly raised are comparatively few, and the decisions have hardly been sufficiently uniform or authoritative to establish any general rule, and he adds that, though some American courts of high authority, influenced by local statutes, incline against the view that a highway may be established independently of the action of the body charged with its repair, yet in other States the courts without expressly deciding that an acceptance by mere public user is sufficient, have nevertheless specified user as one of the modes in which an acceptance might be indicated."

But in England, though it was at one time held, as in many of the

United States, that an acceptance by the public generally by mere user alone of a road, was not sufficient to charge the parish with keeping it in repair, *Rex* v. *The Parish of St. Benedict*, 4 B. & Ald. 447, *Rex* v. *Mellor*, 1 B. & Adol. 32, *Rex* v. *Cumberworth*, 3 B. & Adol. 108, yet subsequently in *Rex* v. *Leake*, 5 B. & Adol. 469, it was held that the absence of any acceptance by the parish was entirely immaterial. *Parke*, *J.* said "the absence of repairs by the parish is indeed a strong circumstance in point of evidence to prove that the road is not a public one—the fact of repair has a contrary effect. But the conduct of the parish in acquiescing or refusing an acquiescence, is in my opinion immaterial in any other point of view. The judgment of Mr. Baron Bailey in the case of *Rex* v. *St. Benedict* was cited to the contrary, but I must say that I cannot accede to the doctrine, nor am I aware that there is any authority for it. *Littledale*, *J.* said : "The adoption by the parish, is no more than the use of it by the public. The parish are merely part of the public." *Denman*, *C. J.* said : "I by no means think any act of adoption necessary to make a parish liable to repair a common road. I am of opinion that if it is public the parish is of common right bound to repair it." And in later cases, *Regina* v. *Petrie*, 30 Eng. L. & Eq. R. 207, *Surrey Canal Co.* v. *Hall*, 1 M. & G. 392, the same doctrine is held where no acceptance by the parish was proved except by common use. And it seems that the law in England is considered as settled, that no acceptance by the parish is necessary, where there is a dedication of a way to the public use, and where there has been a long and uninterrupted use of the same by the public.

Let us now examine the law as it has been held in this State, bearing on this subject. *Gilchrist*, *J.*, in *State* v. *New Boston*, 11 N. H. 407, speaks of the four methods of creating highways, in this State, as being : 1. A laying out by selectmen. 2. By the court acting through commissioners. 3. By charters by the legislature to individuals to build turnpike roads; and 4, by long use of land by the public for the purposes of a highway, or by a dedication of the land by the owners to the use of the public. And he adds that this 4th mode is recognized by numerous decisions of this court, and see authorities cited p. 409. It is said in Angell on Highways, sec. 131, that "prescription" in its more general acceptation is defined to be "a title acquired by possession, had during the time and in the manner fixed by law ;" that prescription by immemorial usage can in general only be for things which may be created by grant, for the law allows prescriptions only to supply the loss of a grant, and that inasmuch as the public cannot take by grant, prescription in its strict sense has no application to highways.

It is said in *Post* v. *Pearsall*, 22 Wend. 444, by *Senator Furman*, that, as the law then existed in that State, (New York) and had in substance existed since the formation of the Constitution, the only way that an *individual* can acquire a right in real estate is by grant, or by an adverse possession of twenty years under a claim of title, in which case the law presumes a grant. And as to the *public* the only way in which they can at common law acquire an easement in the lands of another is

by *dedication.* And although Mr. Angell admits that some courts have applied the doctrine of prescription to highways, still he thinks that, more properly speaking, the use by the public in such cases unless by virtue of some statute, is 'but a fact from which a dedication to the public may be presumed.

But in this State a different rule as to prescriptions has been established. It is said in 2 Greenl. Ev. sec. 529, that, by the weight of authority as well as the preponderance of opinion, it may be stated as the general rule of American law, that an adverse exclusive and uninterrupted enjoyment for twenty years of an incorporeal hereditament affords a conclusive presumption of a grant or a right, as the case may be, which is to be applied as a *presumptio juris et de jure,* wherever by possibility a right can be acquired in any manner known to the law. This doctrine was fully adopted as the law of this State in *Wallace* v. *Fletcher,* 30 N. H. 434, where it was held that a party claiming title under such possession, is not obliged to rely merely on a presumption of a grant, but he may rest on a presumption of right, or of any grant, reservation or record which may be necessary to establish his title, and that this may properly be regarded as a species of prescription, established here by a course of judicial decisions by analogy to the statute of limitations of real actions. The doctrine of *Wallace* v. *Fletcher* has been reaffirmed by this court in *Bow* v. *Allenstown,* 34 N. H. 351, 374, and in *Webber* v. *Chapman,* 42 N. H. 326, 336, where it is expressly held that the doctrine applies both to private ways and public highways. In this view it would be a proper use of terms to speak of highways by prescription as well as by dedication. And both these ways of establishing highways are evidently included by *Gilchrist, J.,* in his 4th method of establishing highways.

By the provisions of our statute, Rev. Stats. ch. 53, sec. 7, nothing short of twenty years use of a highway by the public can constitute it a public highway. No matter whether the way was dedicated to the public or held adversely, where it does not appear to have been laid out according to the provisions of the statute. *Haywood* v. *Charlestown,* 34 N. H. 23 ; *Northumberland* v. *Railroad,* 35 N. H. 574 ; *Smith* v. *Northumberland,* 36 N. H. 38. But after twenty years uninterrupted use of a highway by the public it is to be presumed that it was legally laid out, and if so then the town in which it is located is bound to keep it in repair.

So, where there is no proof of dedication, it was held by the court of Massachusetts, *Shaw, C. J.,* in *Reed* v. *Northfield,* 13 Pick. 94, "that public easements as well as others may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption from such enjoyment that they were at some anterior period laid out and established by competent authority." See also to this point *Stedman* v. *Southbridge,* 17 Pick. 162 ; *Folger* v. *Worth,* 19 Pick. 108 ; *Valentine* v. *Boston,* 22 Pick. 75 ; *Brownell* v. *Palmer,* 22 Conn. 107 ; *Commonwealth* v. *Belding,* 13 Met. 11.

In this State, before our statute requiring twenty years use, there might be highways by dedication and acceptance without regard to the

time the highway had been used.  It was held that where a way was dedicated to the public and accepted by the selectmen of the town in which it was located, that was a sufficient acceptance to make it a public highway at once, although the proceedings of the selectmen were irregular, so that the laying out would have amounted to nothing as a legal laying out, aside from the dedication.  *Hopkins* v. *Crombie*, 4 N. H. 523.  This subject is fully discussed in *State* v. *Atherton*, 16 N. H. 203, by *Parker*, *C. J.*, and the authorities cited and examined, and it is there held, that, although in case of dedication, there must be some acceptance to make it a public highway, yet it is there expressly stated that twenty years user will be conclusive evidence of such an acceptance.  The same doctrine is held in *Williams* v. *Cummington*, 18 Pick. 312 ; *Valentine* v. *Boston*, 22 Pick. 75 ; *Rex* v. *Bar*, 4 Campbell 16.  So in England it was held that twenty years user was conclusive evidence both of dedication and acceptance.  *Rex* v. *Leake*, *supra*.  And in *State* v. *Atherton*, *supra*, *Parker*, *C. J.*, says there seems to be no reason why public authorities may not, by obstructing such public passage, or by public notice of dissent, prevent any charge upon the public in any case of that description, where they did not intend or desire to become chargeable.

When our statute required twenty years user to make a highway public, even though it might have been dedicated and accepted long before that time expired, we think it was intended that such public use for that length of time should be sufficient not only to be conclusive against the land owner, but against the town  or city in which such highway is located.  In case of a dedication, such user is conclusive evidence of an acceptance, and in case there is no evidence of any express dedication, yet such use for that time, if uninterrupted, continuous and adverse, would be conclusive evidence of a right thus to use it as a public highway, both against the land owner and the city or town.  So that upon the evidence stated the court might have found a highway at the place of the accident, either by dedication and acceptance, or by prescription, either of which would have been sufficient.

In *Campton's Petition*, 41 N. H. 197, it was held, that, "in analogy to other prescriptions arising from lapse of time, adverse occupation and the like, it may well be held that such user is evidence that the highway, at some former period, was duly laid out and established by competent authority.  *  *  *  At least such highway may be regarded as legally established and, like other highways, a charge upon the town for repairs, and making it liable for injuries caused by defects.  It becomes indeed a public highway as much as if its existence were proved by the record of a legal laying out, and it is so regarded by the statute."  To the same effect are *Jennings* v. *Tisbury*, 5 Gray 73 ; *Durgin* v. *Lowell*, 5 Allen 398 ; though in the latter case the way in question was not held a public highway, because, among other things, there was a sign posted up at the entrance of the way and pointing to it, on which the words "*Private Way*" were printed, which was held sufficient to give

notice to all, that, when they used it, it was at their own risk, and that
the city was not liable for its repair.

Upon the findings of the court in this case there must be

*Judgment for plaintiff.*