# COUNTY OF CHITTENDEN,

##### AT THE

## JANUARY TERM, 1870.

###### PRESENT :

Hon. JAMES BARRETT,
Hon. WILLIAM C. WILSON,
Hon. BENJAMIN H. STEELE,   } Assistant Judges.
Hon. HOYT H. WHEELER,

---

## CHARLES K. WHITNEY *v.* TOWN OF ESSEX.

### *Highways.   Adoption.   Evidence.*

When the land owner has given up his land to the public use for a highway, and the town has voluntarily taken upon itself the burden of keeping it in repair, the same end is obtained in respect to the right to the land and the duty to repair that would have been if it had been laid out with all the statutory formalities.

The assumption of the burden is the act of the town; and any evidence that shows that a town has kept a road in repair within its limits, has a tendency to show that the town kept it in repair because it was its duty to do so.   The evidence is not necessarily confined to the acts of selectmen.

Testimony of the plaintiff that he was forty years old, and had lived in the town ever since he was two years old, that he was acquainted with the road in question, and that it had been kept in repair by the town ever since he knew it, clearly shows that the town kept it in repair because it was its duty to.

Where the duty to repair rests upon the town by reason of an adoption, the adoption and duty would extend to a path for foot travel close beside the carriage-path, where it appeared that the road was in a village, where there would naturally be considerable foot travel in passing to and from the hotel, post-office and stores, and that the foot-path was the only suitable place for pedestrians to pass upon.

Where work had been done on the road at various places each way from the point where the accident happened, it tended to show that the road had been adopted there.

The public having used the floor of some hay-scales as a part of such foot-path for a long term of years, by permission of the owners of the same, it would be a proper question to be submitted to the jury whether the owners had not, in fact, given up the floor for the use of the public for that purpose, and whether the same had not been adopted by the town as a part of the foot-path.

CASE, to recover for personal injuries sustained by the plaintiff, by reason of an alleged defect and want of repair of the highway in Essex, leading easterly from " Butler's corner," so called, through Essex Centre. Plea, the general issue, and trial by jury, April term, 1869, PIERPOINT, C. J., presiding.

The plaintiff testified: I am forty years old, I have lived in Essex since I was two years old. Butler's corner is about one mile west of Essex Centre ; I am acquainted with the road which leads easterly from the former to the latter place. The road between the two places has been kept in repair by the town ever since I knew it. I have assisted in repairing it, under direction of the highway surveyors. I never saw any work done on the road east of the Fletcher store, but have known it to be done east of Bates' store, and nearly in front of the hotel. From the hotel to the Fletcher store, the land is level, sandy and nearly even, and required but very little work. The fences by the sides of the road are about four rods apart. The land on the sides of the traveled path is nearly level. On the north side of the carriage road nothing has been done to the land. The south side is quite level, the foot-path on the south side extends some thirty rods west of the Fletcher store. Between the Fletcher store and Bates' store the foot-path is about four feet from the south side of the traveled track, in some places not so much. Persons on foot going from the Fletcher store to the Bates store and to points east of there, have always taken the foot-path, almost universally. There never was any other side-walk there. There were some hay-scales on the south side of the carriage-way, near the west end of the Bates store and three or four feet from the store. These scales have been there since my first recollection of the place, and the side-walk ran right over them. The post-office, at the time of my injury, was in the third building west of the Bates store, and about thirty-five or forty feet from it, and had been kept there about two or three months. Previous to that it had for eight years or so been kept in the second building west of the Bates store. The mail arrived at that post-office once a day from the east; and once a day from the west ; and people were in the habit of frequenting

61

the office on the arrival of the mails, and it was a place of considerable resort—a good many people were there. Persons going on foot to the post-office from points to the east of it almost universally passed over the hay-scales and the foot-path I have mentioned. It is about twelve to fourteen rods from the Fletcher to the Bates store. On the 30th of October, 1863, about noon, I visited the post-office for the purpose of obtaining a letter, which I expected had arrived there for me, an important letter. My team was then in the shed just south of the Bates store, fronting the common. Having received the letter at the post-office, I started from there to go to my team, intending to return home. In going from the post-office, I took the foot-path leading across the scales, and when I arived near the center of the scales, walking rather fast, I stepped on to one of the planks which covered the scales, and it went down with me, injuring my knee seriously and causing great pain. After I fell I noticed that the plank which let me down was rather short, and that some nails had been "toed" in to hold it in its place. I also noticed that some dirt had settled into the crack between the end of the piece which let me down, and the end of the other piece reaching from the center beam to the south side of the scales. Until the accident occurred I had no knowledge that the scales were dangerous. Within fifteen days after the accident occurred, I informed the selectmen of Essex of it, and that I claimed damages of the town on account of the accident. The road or path is level from the post-office into the traveled way. The top of the scales was about two feet higher than the carriage-way. The carriage-way came up close to the north side of the scales.

*Cross-examination.*—The side-walk is a little higher than the traveled track. I saw some work done on the highway in the Buel hollow, three fourths of a mile west of the scales. The carriage-path is two rods wide, perhaps more. It is too sandy to pack down by foot travel, and not so good walking there as on the side-walk. I never knew any foot-path besides the one I have mentioned between the Fletcher store and the Bates store. Never knew any foot travel to go in the carriage-path. The hay-scales have been there as long as I remember. I do not know who put them there. There was nothing in the appearance of the scales to indicate that there was any danger in crossing them.

Dr. L. C. Butler, a witness called by the plaintiff, testified that he was fifty years old, was born and brought up at Essex Center; have lived there the greater part of my life, and when not residing there had been in the habit of being there frequently. Have been acquainted with the highway leading east and west

through Essex Centre. The highway surveyors of Essex have worked the road at different points. The road just east of the tavern, at Essex Center, descends to the east. Just west of the Fletcher store the road descends gently to the east and to the west. I have known the highway surveyors to work upon the road about opposite to the tavern at Essex Center, and at different points on the highway between the Fletcher store and Butler's corner every year, since my first recollection  The road I have mentioned is the main and stage road from Essex Centre to Burlington. There are some hay-scales on the south side of the highway at Essex Centre. The carriage-path of the highway has run near to the north side of the scales since they were built—within four or six feet of the scales. There is a side-walk on the south side of the carriage-path. This side-walk passed in front of the buildings on the south side of the road, and was a well beaten and visible path. It extended to the Fletcher store, and I think beyond the Methodist chapel, about fifteen rods beyond the Fletcher store, at the time of the injury to the plaintiff. On the north side of the carriage-path there has never been a side-walk. The side-walk or foot-path on the south-side of the carriage-path, of which I have spoken, was generally used by foot travelers passing from the tavern as far west as the post-office, and by those going east from the Fletcher store, and points farther west. It was the natural place for foot travel to go, and it was quite generally traveled. Directly opposite the scales the travel with teams going around the corner of the Bates store went quite near to the scales. In going from the post-office to points east of there the foot-travel always crossed the hay-scales in the foot-path I have mentioned.

*Cross-examination.*—The scales had been there thirty years or more; they were put there by a company. I suppose they belonged to the company. They had never been controlled by the the town. At the time of the accident they were in use, and belonged to the successors of the company, and were under the control of Bates. I recollect of seeing no work done on the highway before the scales were erected.

Upon the above recited testimony, and some further testimony bearing only upon the extent of the plaintiff's loss and injury resulting from the accident, the plaintiff rested. The court then upon the defendant's motion directed a verdict for the defendant, which was accordingly returned; to which the plaintiff excepted.

*E. R. Hard* and *Henry Ballard*, for the plaintiff, cited *Blodgett* v. *Royalton*, 14 Vt., 288 ; *Hyde, ad'mr*, v. *Jamaica*, 27 Vt., 443 ; *Willey* v. *Portsmouth*, 35 N. H., 303 ; *Folsom* v. *Underhill*, 36 Vt., 580 ; *Lawrence* v. *Mt. Vernon*, 35 Maine, 100 ; *Kelsey* v. *Glover*, 15 Vt., 708 ; *Burnham* v. *City of Boston*, 10 Allen, 290 ; *Glidden* v. *Reading*, 38 Vt., 52 ; *Davis* v. *Hill*, 41 N. H., 329 ; *Green* v. *Danby*, 12 Vt., 338 ; *Morse et ux.* v. *Richmond*, 41 Vt., 435.

*W. G. Shaw* and *E. J. Phelps*, for the defendants.

There being no direct evidence that the road in question was ever laid out or opened by the town of Essex, the defendant is not liable for its insufficiency, unless the evidence tends to show its adoption by the town. The evidence was not sufficient in law to establish this fact. Nothing was proved except that the road had in different places been repaired by the highway surveyors. A highway surveyor cannot lay out or adopt highways. That power rests solely in the selectmen. *Hyde* v. *Jamaica*, 27 Vt., 454, 457 ; *Folsom* v. *Underhill*, 36 Vt., 580 ; *Blodgett* v. *Royalton*, 14 Vt., 288 ; *Page* v. *Weathersfield*, 13 Vt., 424 ; *State* v. *Alstead*, 18 N. H., 59 ; (25 U. S. Dig., 518, § 2.) But if the town have adopted the road in question there is no evidence that they have adopted it to its full width within the limits of the fences, certainly not to the extent of maintaining side-walks, and as the liability of the town rests solely upon its adoption of this road, it cannot be liable for any deficiency in what it has clearly not adopted. The adoption in this case consists entirely in repairs of the road. This contemplates an existing road which the town has assumed to maintain. It cannot by such assumption be held to have adopted anything which was not a road when such assumption commenced. But even had the scales not been in existence when the town adopted the road, the subsequent continuous use and control of them as private scales and for private purposes for more than twenty years, is such an adverse use and possession of them as extinguishes the control of the town over them and that part of the highway on which they stand. The case stands

in principle the same as when previously presented to the supreme court. See 38 Vt., 270.

The opinion of the court was delivered by

WHEELER, J. It is not denied that the plaintiff's evidence tended to show that special damage happened to him in such a manner that the defendants would be liable for it if the place where it happened had been a public highway that the defendants were bound to keep in repair; but it is denied that the evidence had any tendency to show that the place was such a highway. The case is wholly barren of any evidence that the road was ever laid out and established as a highway, and of any evidence that the selectmen of Essex have ever taken any action in regard to it, and it is claimed that the burden of keeping it in repair can not have been fastened upon the defendants but by its having been regularly laid out, or through the action of the selectmen.

The process of laying out highways is gone through with for two purposes: one to acquire a right to the necessary land as against the land owner, the other to fasten the duty of building and keeping them in repair upon the towns in which they are situated. When the land-owner has given up his land to the public use for a highway, and the town has voluntarily taken upon itself the burden of keeping it in repair, the same end is attained that would have been if it had been laid out with all the statutory formalities. The assumption of the burden is the act of the town; and although it may be, and probably most often is, manifested by the acts of the selectmen, it is not through them alone that a town can assume the burden, and proof of the assumption is not necessarily confined to proof of their acts. Any evidence that shows that a town has kept a road in repair, within its limits, has a tendency to show that the burden of keeping it in repair has either been cast upon the town by the necessary proceedings, or that the town has voluntarily assumed the burden without any proceedings.

In this case the plaintiff testified that he was forty years old and had lived in Essex ever since he was two years old; that he was acquainted with the road in question, and that it had been kept in repair by the town ever since he knew it. Clearly this

testimony had a tendency to show that the town kept this highway in repair because it was its duty to do so.

The defendants also claimed that the evidence does not tend to show that the walk over which the plaintiff was passing was ever adopted as a part of the highway, even if it does tend to show that the highway itself was adopted.

The evidence showed that this road was in a village, where there were stores, a hotel and post-office, between which there would naturally be considerable foot-travel. The path over which the plaintiff was passing lay between the hotel and one store in one direction, and the post-office and another store in the other direction, and was the only suitable place for foot-passengers to pass upon at that place, and was close beside the carriage-path. According to this evidence, the highway had, at this place, one path for foot-travel and another for carriage-travel, and one path was adopted as much as the other. No work had been done by the defendants on either path at this particular place, but the evidence tended to show that work had been done at various places each way from this one on this road, and in that way tended to show that the road at this place had been adopted. The road was for foot as well as for carriage travel, and it cannot be said, as a matter of law, that the only proper place in the road for foot-travel was not adopted for that purpose as fully as the carriage-path was for carriage-travel. The plaintiff was a foot-passenger, and if he had unnecessarily left the path commonly used for foot-travel, and taken the one used for carriage-travel, and received an injury there for which he sought to recover of the defendants, it would at least be a question proper to submit to the jury whether he was not in fault in leaving the foot-path.

It is further claimed that the floor of the hay-scales, over which the plaintiff was passing when the damage happened to him, could not have been adopted by the town as a part of the foot-path, so that the town was bound to keep it safe for foot-travel, because the scales were owned and controlled by private persons. The purposes for which hay-scales are ordinarily used are not so absolutely inconsistent with the use of the floor of them by the public as a part of a foot-path, that it could not have been adopted by

Whitney v. Essex.

the town for that purpose while the owners kept control of them for their ordinary uses. The use of the floor as a part of the scales by those having control of them would commonly be but a few moments at a time, at long intervals, and when not so in use it would be as suitable as any, and more suitable than most ground for a foot-path. The fact that the owners had permitted the public to use it for a foot-path for so long a time was sufficient evidence to be submitted to the jury, upon the question whether the owners had in fact given up the floor to the use of the public for that purpose.

It is also further claimed that the former decision, made by this court in this case, ( 38 Vt., 270,) covers the points now raised. When that decision was made the county court had held and charged that the undenied continuous use of the foot-path over the scales, as a part of it, by the public, for thirty years, independently of any working or preparation of it for travel by the town, the town knowing of such use and doing nothing to prevent it, rendered the town liable for its want of repair. The evidence upon which that charge was made was very different from that now presented. Then it appeared that the town had kept in repair a traveled track, sufficient and suitable for all travel, besides the one over which the plaintiff was passing, and that the path over which he was passing was a narrow foot-path, fifteen or twenty feet south of the traveled track, passing over the ground in its ungraded and natural condition, except where individuals had slightly graded it in front of their own premises. This court held that charge of the county court to be erroneous. It is obvious that the decision then made does not conflict with the one now made.

The judgment of the county court is reversed, and the case remanded. BARRETT, J., dissenting.