HOLLIS WAY AND ADAH WAY *v.* ASA FELLOWS.

October Term, 1915.

Present:  MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 2, 1917.

*Suit to Enjoin a Trespass—When Maintainable—Highways—Acceptance — Injunction — When Granted — Shortage of Findings as to Jurisdiction—When Waived.*

A suit to enjoin trespass to real estate may be maintained by one in possession against a stranger to the title.

A highway cannot be established either by dedication or by adverse user by the public unless it is accepted and adopted as such by the proper town officers; although such adverse user, for the statutory period, may be evidence of an adoption.

Where a bill to enjoin trespass to real estate alleged threats of repeated trespasses, and the answer alleged a right of way, and disclosed a use thereof by .defendant under a claim of right which in time would ripen into an easement by prescription, the plaintiff was entitled to injunctive relief, although there was no finding of the threats alleged, the case being otherwise made out.

Where the case made on a bill of complaint is within the general juris-
diction of the court of chancery, a shortage of findings to support
the court's jurisdiction may be waived, and is waived if not raised
in the court below.

APPEAL IN CHANCERY. Heard on bill, answer, report of
special master, and exceptions of both parties thereto at the
June Term, 1915, Caledonia County, *Miles,* Chancellor. Decree,
dismissing the bill with costs. Plaintiffs appealed. The opinion
states the case.

*Simonds, Searles & Graves* for the plaintiffs.

*Porter, Witters & Harvey* for the defendant.

MUNSON, C. J. The orators and the defendant live on ad-
joining lots on the west side of the highway, and are the owners
of meadow fields between which, previous to 1878, the highway
extended northerly from their dwellings to the village of West
Danville. In the year named the selectmen laid out and opened
for public travel a new road, lying west of the old road, and ex-
tending from a point just north of the orators' house, which is
the most northerly of the two dwellings, to a point in the old
highway near West Danville, and discontinued the correspond-
ing section of the old road. This northern terminus was about
50 rods northeast of the most northerly extension of the orators'
land, and a much greater distance beyond the land of the de-
fendant. The meadows above referred to are on the southerly
end of the discontinued road; the defendant's meadow cornering
on the highway just south of the point of divergence, and the
orators' meadow extending further north than that of the de-
fendant. The remainder of the orators' farm bordering on the
discontinued road is pasture land, and all the land lying east
of this pasture belongs to other parties.

The orators claim the full width of the old road north of
the defendant's meadow, and to the center of the road between
the meadows, and seek to restrain the defendants from using the
road. The defendant denies that the orators have title to any
part of this road, and claims that the public have acquired a
prescriptive right to use it as a public highway. The facts ap-
pear from the report of a special master.

The deeds are not before us, but the report states in terms that between the meadows the dividing line was the center of the old road; and here the orators claim nothing beyond this. It also appears from the report that the record title to the orators' pasture extended to the old road. The claim of the orators to own beyond the center rests upon these facts. Previous to 1879, the pasture was separated from the road by a fence. About that time the owner of the pasture erected gates across the road at each end of the pasture, and removed the fence. There was at this time a fence on the other side of the road, which was the dividing line between the road and the lands adjoining it on the east; and this fence has since been maintained, and the occupancy under the orators' title extended to it, in pursuance of an agreement between the owner of the pasture and one of the owners opposite, and a tacit understanding with another owner, that it should be the line between the pasture and the lands opposite. It is not necessary to consider whether these findings should be construed as extending orators' title by deed to the center of the old road, or only to the fence on the pasture side of the road; nor to consider, on the other hand, whether they are sufficient to support an inference of title to the land within the limits of this portion of the old road by prescription. The findings as to possession are sufficient to support this action against a stranger to the title. *Rice* v. *Chase,* 74 Vt. 362, 52 Atl. 967; *Stratton* v. *Lyons,* 53 Vt. 641.

The report shows the use of the old road by the public from the time of its discontinuance to the bringing of the bill, the purpose and use of the gates mentioned above, the placing of certain obstructions in the road at other points and at different times, and the understanding and claims of those who travelled the road. It is not necessary to consider these matters, for they are rendered immaterial by a further finding. The report states that since the building of the new road the town has not repaired nor in any way recognized the old road. This finding is fatal to the defendant's claim that the discontinued road had subsequently become a highway by prescription. While public easements can doubtless be acquired in other ways than by statutory laying-out, it is certain that people cannot by going where they will establish highways at will. Neither dedication nor fifteen years' adverse user, standing alone, will create a public highway. *Bacon* v. *Boston & Maine R. R.,* 83 Vt. 421,

76 Atl. 128. In the absence of a statute affecting the question, it is essential that there be some action on the part of the town authorities from which it can be inferred that the road has been adopted by them as a public highway.

It is sometimes said that such an easement rests upon the presumption that the way has been laid out by competent authority. *Reed* v. *Northfield,* 13 Pick. (Mass.) 94, 23 Am. Dec. 662. Another view is that it rests upon the presumption that the right has been acquired by dedication and adoption. See 13 R. C. L., § 23 *et seq.*; Angell on Highways, § 131 and note; *Fowler* v. *Pratt,* 11 Vt. 369, 382. While adverse user by the public for the necessary period may be evidence of an adoption, it is wholly ineffective, under our highway system, to establish a public highway if the town authorities have refused or failed to sanction the adoption.

Our decisions relating to the dedication of highways are in point. The question frequently arose under the highway damage law; and there it was held that neither a dedication of land to the public for a highway, nor the use of it as such by the public, was sufficient to impose upon the town the duty to keep it in repair, unless it had been accepted and adopted by the proper town officers. *Clarendon* v. *Rutland R. R. Co.,* 75 Vt. 6, 52 Atl. 1057; *Brown* v. *Swanton,* 69 Vt. 53, 37 Atl. 280; *Tower* v. *Rutland,* 56 Vt. 28; *Whitney* v. *Essex,* 42 Vt. 520; *Folsom* v. *Underhill,* 36 Vt. 580; *Morse* v. *Ranno,* 32 Vt. 600; *Hyde* v. *Jamaica,* 27 Vt. 443; *Pratt* v. *Swanton,* 15 Vt. 147; *Blodgett* v. *Royalton,* 14 Vt. 288; *Page* v. *Weathersfield,* 13 Vt. 412; *Bailey* v. *Fairfield,* Brayton, 128. But under our system there cannot be a public highway without obligation to repair; and as the town has, in general, the burden of repair, it is for the town to determine what shall be highways therein, subject to the appeals provided by statute. *Bacon* v. *Boston & Maine R. R.,* 83 Vt. 421, 440, 76 Atl. 128.

The bill alleged threats of repeated trespasses and prayed for an injunction, which was granted. The defendant moved for a dissolution of the injunction, and it was so modified on the allegations of the answer as to permit the drawing of defendant's hay of that season over that part of the road adjacent to his field, and the passing of his children on foot over the road to and from school. The master makes no finding of the threats alleged, and it is urged that equity has no jurisdiction to determine the

title on a finding of a single trespass. But the defendant was claiming a right of way, and the averments of the answer disclosed a use of the road by him under a claim of right which in time would ripen into an easement by prescription. This was enough to entitle the orators to injunctive relief. *Murphy* v. *Lincoln,* 63 Vt. 278, 22 Atl. 418; *Whipple* v. *Fair Haven,* 63 Vt. 221, 21 Atl. 533.

Moreover, so far as appears, the defendant allowed a decree to pass without questioning the court's jurisdiction. The case made on the bill was clearly within the general jurisdiction of the court of chancery. In such cases, a shortage of findings to support the court's jurisdiction can be waived. *Deerfield Lumber Co.* v. *Lyman,* 89 Vt. 201, 207, 94 Atl. 837. It is waived if not raised in the court below. *Barber* v. *Bailey,* 86 Vt. 219, 224, 84 Atl. 608, 44 L. R. A. (N. S.) 98.

*Decree reversed and cause remanded with direction that a decree be entered for the orators in accordance with the views herein expressed.*