## ROBERTS v. TENNESSEE COAL, IRON & R. CO.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1918. Rehearing Denied February 27, 1919.)

### No. 3099.

1. STATUTES ⚖191—CONSTRUCTION—STATUTE REGULATING MINING.
   Words and terms used in a mining statute are intended to convey the meaning they have in mining parlance.

2. MASTER AND SERVANT ⚖118(7)—MINING STATUTES—"ESCAPE WAY."
   An "escape way," as used in a mining statute, means a passageway leading from the inside to the outside of the mine.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Escape Way.]

3. MASTER AND SERVANT ⚖118(3)—MINING STATUTES—"SLOPE."
   A "slope," within the meaning of a mining statute, is a level or inclined way, passage, or opening used for the same purpose as a shaft—citing Words and Phrases.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Slope.]

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. NEGLIGENCE ☞141(8)—TRIAL ☞296(4, 5)—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

    The giving of an instruction which defined contributory negligence as negligence that "helps to bring about the injury" *held* not error; but, if so, it was harmless, in view of other instructions based on proximate cause.

5. COURTS ☞372(3)—FEDERAL COURT—FOLLOWING STATE DECISIONS—INSTRUCTIONS.

    An instruction as to what would constitute contributory negligence under the circumstances shown by the evidence *held* proper, where it conformed to the rule established by decisions in the state.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by James B. Roberts, administrator of the estate of Angus McNeil, deceased, against the Tennessee Coal, Iron & Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

W. A. Denson, of Birmingham, Ala., for plaintiff in error.

Augustus Benners and James Rice, both of Birmingham, Ala., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

WALKER, Circuit Judge. This was an action, under the Alabama Employers' Liability Statute (Code 1907, § 3910), by the plaintiff in error, as the administrator of Angus McNeil, deceased, to recover damages for the latter's death, which was attributed to the alleged negligent failure of his employer, the defendant in error, to provide a reasonably safe place for the performance by the deceased of his duties as an employé engaged in operating a machine for cutting or excavating coal in a mine of the defendant in error, in that the latter negligently suffered its plant to be defective. The machine was operated by electricity transmitted from a trolley wire above it; a pole with a nonconducting handle being used for connecting or disconnecting the machine with the trolley wire. At the time the deceased was killed he was on top of the machine mentioned, which had been moved through a cross-cut leading from a heading in the mine to an air course which ran parallel with that heading. When the machine was near to a switch at the connection of the track through the cross-cut with the track in the air course, the deceased was killed as a result of his head coming in contact with the trolley wire above it, which carried 250 volts, direct current, of electricity. A reversal of the judgment in favor of the defendant in error is sought because of rulings made by the court in admitting and excluding evidence, and because of instructions given by the court to the jury.

No exception was reserved to some of the rulings on evidence which are assigned as errors. We discover no reversible error in any such ruling which is presented for review.

An exception was reserved to the following statement made by the court in its oral charge to the jury:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That statutory duty had no application to this case, because the undisputed evidence shows that the voltage was less than 300, and this place where the accident occurred was neither in a slope, nor in a manway, nor in a shaft, so that there was no statutory duty resting on the defendant to shield the wire that plaintiff's intestate came in contact with, and that caused his death."

The statute referred to is one which prescribes the following regulations concerning the insulation, maintenance, and operation of electrical apparatus in coal mines in the state of Alabama:

"Conductors in shafts and slopes used as traveling ways and in escape ways shall be protected.   *   *   *

"All trolley wires carrying a voltage of between 300 volts and 600 volts direct current, or 240 volts and 480 volts alternating current, must be properly shielded, except where the same are at least 6½ feet above top of rail." General Acts of Alabama 1911, pages 534, 535, § 100, rules 11 and 13.

[1, 2] The first-quoted regulation is applicable only to conductors in shafts or slopes used as traveling ways and in escape ways. The last-quoted regulation is not applicable to a trolley wire carrying only a direct current of less than 300 volts. As the evidence showed that the trolley wire in question carried less than 300 volts direct current, the statute was not applicable to the facts of this case, unless there was evidence tending to prove that the place where the deceased was, when he came to his death as a result of a part of his body coming in contact with the trolley wire above, was in an escape way, or in a shaft or slope used as a traveling way. There was no evidence tending to prove that that place was in an "escape way." That expression, as it is used in the statute, describes a passageway leading from the inside to the outside of a mine, through which miners in the mine could escape to the outside. Robinson v. Maryland Coal & Coke Co., 196 Ala. 604, 72 South. 161. We do not understand that it is contended that the place in question was an escape way within the meaning of the statute, and the evidence adduced was not such as to support such a contention.

[3] It is contended that the place was a "slope," within the meaning of that word as used in the statute. It is to be inferred that the use of that word in such a statute was intended to convey the meaning it has in mining parlance. As ordinarily used in such a connection, the term "slope" means an inclined way, passage, or opening used for the same purpose as a shaft. 7 Words and Phrases, 6532; Century Dictionary, "Slope." Though the term be regarded as having a somewhat broader meaning, and as embracing a main haulage passageway, whether inclined or level, there was no evidence tending to prove that the place at which the deceased was killed was a "slope." There was no evidence in conflict with the testimony of one of the witnesses for the plaintiff in error to the effect that the place where the deceased was killed was "no part of either the slope or manway." Another of the plaintiff in error's witnesses referred to the heading which the deceased and the machine he was on had left when they entered the cross-cut as a "slope." When the deceased was killed, he was not in the place so referred to. He was then entirely out of that place, and was approaching the junction of the track through the cut-off and

the track in the air course. There was no evidence tending to prove that either the cut-off or the air course could be regarded as a part of a slope. The first-quoted statutory regulation would be given a meaning which its language does not express, if it was held to require that electric conductors in any opening or compartment of a coal mine used as a traveling way shall be protected. Any opening from which coal is mined, such a machine as the deceased was on being used, may be used as a traveling way by those engaged in such mining, in going to or from their work. Manifestly the statutory regulation in question was not intended to apply to all such places. The statutory requirement is applicable only to such conductors "in shafts and slopes used as traveling ways and in escape ways." The court properly ruled that under no evidence adduced was that regulation applicable.

But under the common law, and regardless of that statute, it was the duty of the defendant in error to exercise reasonable care to see that the place where the deceased was when he was killed, engaged as an employé doing work assigned to him, was reasonably safe. On the question of the employer's discharge of this duty the evidence adduced was conflicting. There was evidence for and against either of the conclusions that it was negligent to leave the trolley wire unshielded at the place in question, or in permitting it to be as low as it was. On the other hand, there was evidence for and against the conclusions that the deceased's death was proximately contributed to by his negligently being on the machine, or by his negligently failing to avoid contact with the wire above him, the presence and location of which were previously known to him. The questions raised by this conflicting evidence were submitted to the jury under instructions which left it to them to determine whether the employer did or did not perform its duty of seeing to the safety of its plant at the place where the deceased was killed, and whether the latter was or was not guilty of contributory negligence. Exceptions were reserved to portions of the charge given by the court in submitting those questions to the jury. Mention will be made of such of those rulings as seem to us to justify any comment.

[4] The following portion of the court's oral charge was excepted to:

"The law of Alabama is that, even though the employer be at fault in a way that helps to cause the injury, yet if the employé who is injured or killed is also at fault—his conduct is negligent in a way that also helps to bring about the injury—then the injured employé, or his representative, if killed, has no right of action against his employer."

This instruction is criticized because the hypothesized negligence of the deceased which would stand in the way of the plaintiff's recovery was described as helping to bring about the injury, instead of being described as proximately contributing to the injury. It cannot be supposed that a different meaning would have been conveyed to the jury, if the orthodox expression commonly used to describe the negligence of an injured person having the effect of preventing a recovery had been employed. If the court had said that what was relied on as contributory negligence must have proximately contributed to the injury,

it hardly is to be doubted that an ordinary jury of laymen would have been aided in understanding what was meant if the court had added that that conduct must have helped to bring about the injury. The language used made it plain enough that the negligence of the deceased employé, which would deprive his personal representative of a right of action, must have been an effective cause of the injury in like manner that the alleged fault of the employer must have been a cause of the injury, for the latter to be liable, in the absence of contributory negligence on the part of the deceased. If the quoted instruction is subject to any criticism, the most that properly can be said against it is that it was not sufficiently definite and specific in describing what was required to constitute contributory negligence. Such a fault justifies an explanatory instruction, which no doubt would have been given, if it had been asked. The giving of the instruction mentioned was not reversible error. From the court's charge as a whole the jury could not well have understood that the plaintiff was deprived of the right to recover by conduct of the deceased relied on as contributory negligence, unless his death was attributable in part to that conduct as a proximate cause of it.

[5] The plaintiff excepted to the giving of the following written charge requested by the defendant:

"If the jury believe from the evidence that the plaintiff's intestate knew of the location of the wire which caused his death, and of the danger therefrom, and if the jury believe from the evidence that the death of the plaintiff's intestate was proximately due to his inattention, indifference, absentmindedness, or forgetfulness of the presence and danger of said wire, then their verdict must be for defendant."

This charge is criticized on the ground that the deceased's forgetfulness of the presence and danger of the wire was not negligence, unless a reasonably prudent man, under the attending circumstances, would have been likely to be mindful of the peril from the wire. The action of the court in giving the charge in question is supported by often-repeated decisions of the Supreme Court of Alabama dealing with similar instructions given with reference to states of fact not distinguishable in principle from the one disclosed by a phase of the evidence in the instant case. Louisville & Nashville R. Co. v. Hall, 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84; Wood v. Richmond & Danville R. Co., 100 Ala. 660, 13 South. 552; Sloss I. & S. Co. v. Knowles, 129 Ala. 410, 30 South. 584; Alteriac v. West Pratt Coal Co., 161 Ala. 435, 49 South. 867; Kilby Co. v. Jackson, 175 Ala. 125, 57 South. 691; Dorough v. Alabama Power Co. (Ala.) 76 South. 963. The decisions referred to are to be regarded as evidencing the existence of an established rule of conduct in that state. It is the law of that state which this court is called on to administer in the instant case. It may be assumed or conceded that the criticism of the correctness of the instruction would merit consideration if the question were presented to us without previously having been passed on by the Supreme Court of Alabama in decisions repeated and reiterated for many years. In view of the settled course of decisions of the highest court of that state, it does not seem to us that the question presented is an open one. One's

conduct in Alabama must be treated in this court as amounting to contributory negligence, if the settled law of that state requires that it be so treated.

The issues of fact in the case were submitted to the jury under appropriate instructions. A careful examination of the record has not led to the discovery of any error calling for a reversal of the judgment.

Affirmed.