## BOSTON & M. R. R. v. DANIEL.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 218.

1. **Railroads ⬳312(6)—Statute requiring signals for "road" or "street" crossings held to refer only to highway.**

G. L. Vt. 5173, requiring the sounding of signals where a railroad crosses a road or street, only applies to public highways (citing Words and Phrases, First and Second Series, Street).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Road; Street.]

2. **Dedication ⬳44—Intention must be shown by clear evidence.**

The acts and declarations of the owner of property, relied on to establish dedication, must be convincing and unequivocal, and the intention to appropriate to the general use of the public must be clear.

3. **Highways ⬳1—Public adverse user ineffective, if authorities fail to sanction.**

Under the highway system of Vermont, adverse user by the public is wholly ineffective to establish a public highway, if the town authorities have refused or failed to sanction the adoption.

4. **Railroads ⬳350(2)—Evidence as to existence of public highway held insufficient for jury.**

In an action for injuries at railroad crossing, evidence showing that the road was never adopted by the town authorities and was never dedicated *held* insufficient to warrant submission to the jury of question whether road was a public highway.

5. **Railroads ⬳316(1)—Rule as to speed not inadmissible in evidence.**

In an action for injuries at a railroad crossing, a rule of the railroad company that an engine should not be run faster than 35 miles an hour should not be received in evidence; the rule being for the guidance of employees only.

6. **Railroads ⬳312(3)—Equipment of engine with bell and whistle immaterial as to duty to sound warning.**

In an action for injuries at a railroad crossing, it was error for the court to state that the jury could take into consideration "the fact that. engine was equipped with a whistle and bell for the purpose of giving warning of its approach"; such fact being immaterial as regarded duty to sound warning.

7. **Railroads ⬳327(1)—Vermont rule as to traveler's duty to stop, look, and listen stated.**

One who is about to cross a railroad track in Vermont must look and listen for an approaching train, and must stop to listen, if that is necessary to enable him to listen effectually, and if his vision is obstructed he must be specially vigilant as regards his hearing, and if circumstances are such that his hearing cannot be relied on he must look with especial care, and he must continue to look and listen as he approaches the track, until the last moment when the discovery of a train would avail for his protection.

8. **Courts ⬳372(3)—Federal courts will follow law of state courts.**

In negligence cases, the federal courts, in order to assure uniformity and harmony of decision, will follow the law as laid down by the highest state court in the jurisdiction in which the negligence occurs.

9. **Railroads ⬳346(5)—Burden of proving contributory negligence on defendant.**

In an action against a railroad for injuries at crossing, the burden of proving contributory negligence in the United States courts is on the defendant.

Manton, Circuit Judge, dissenting.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Vermont.

Action by Vera Daniel, as administratrix of Louis Daniel, deceased, against the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Reversed.

Writ of error to a judgment of the District Court for $23,750 in favor of plaintiff below against defendant below. The parties will be referred to as aligned below. The action was brought by the administratrix of the estate of Louis Daniel, to recover in her capacity as such administratrix for the death of Daniel, her husband, for the benefit of herself and several dependent children.

The declaration alleged that the proximate cause of the death of Daniel was the negligence of defendant in so operating one of its engines that it failed to ring the bell, blow the whistle, and keep a proper lookout on the engine, and that the engine was run at an excessive speed. Defendant denied the allegations of negligence, and alleged contributory negligence on the part of Daniel in driving on the track in front of the approaching engine, and that the engine was within his range of vision during a relevant period.

The accident occurred on June 14, 1921, at a grade crossing over the Boston & Maine Railroad in the town of Lyndon, Caledonia county, Vt., on a road leading from the state highway between the villages of Lyndonville and St. Johnsbury to the municipal electric light plant of the village of Lyndonville, situate near what is known as the Great Falls on the Passumpsic river. This road, except for the railroad right of way, is through land now or formerly owned by the village of Lyndonville. The road crosses the railroad track at approximately a right angle. There was no evidence, nor is there any claim, that the road was ever laid out as a public highway, but plaintiff contended that it had been dedicated and adopted as such a highway. To that end certain testimony was received upon the trial, and the court submitted the following questions to the jury for a special verdict:

"First. Regardless of the statute requiring the whistle to be sounded or the bell rung, was the defendant negligent in running its engine over the crossing at the speed and in the way and manner it did, thereby causing the accident?"

"Second. Was the road leading over the crossing a public highway?"

The statute referred to in the first question, supra, is section 5173 of the General Laws of Vermont and reads as follows: "A bell of at least thirty pounds weight shall be placed on each locomotive engine, and be rung at the distance of at least eighty rods from the place where the railroad crosses a road or street at grade, and be kept ringing until it has crossed such road or street, or the steam whistle may be blown instead of ringing such bell."

The plaintiff produced testimony to show that neither bell nor whistle referred to in the statute was sounded and this testimony was not controverted. It must therefore be assumed that the jury found that fact as testified to on behalf of plaintiff. Defendant contended that the Vermont statute did not apply, because the road leading to the electric light plant and crossing the railroad track was not a public highway. The court, after calling the attention of the jury to the statute supra, charged as follows: "The court charges you, as a matter of law, that it was the duty of the defendant to ring the bell or blow the whistle at this crossing in accordance with the statute, and if you find that the defendant's failure to ring the bell or blow the whistle was the cause of the accident—in other words, that the accident would not have occurred if the bell had been rung or the whistle sounded—your verdict will be for the plaintiff to recover, unless you find Mr. Daniel was guilty of contributory negligence as hereafter defined."

The court then charged the jury in respect of the common-law duty of plaintiff, regardless of the statute. At the close of plaintiff's case, defendant moved for a directed verdict, and again moved at the conclusion of the whole case on the ground that no negligence had been shown on the part of defendant, and that plaintiff was guilty of contributory negligence. These motions were overruled, and exceptions duly taken by defendant. Various

exceptions were taken to the charge of the court, including that part just above quoted, and various exceptions taken to refusals to charge. Defendant also excepted to the submission to the jury of each question for a special verdict. These exceptions were overruled, and exception in each instance was duly taken.

William W. Stickney, John G. Sargent, and Homer L. Skeels, all of Ludlow, Vt., for plaintiff in error.

J. Rolf Searles and Arthur L. Graves, both of St. Johnsbury, Vt., for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The cause was carefully tried, and objections were made and exceptions taken by counsel for defendant in timely and accurate fashion. These exceptions present clearly certain vital questions in the case, which render unnecessary a detailed statement as to the circumstances of the accident. It is sufficient to state that, if defendant railroad came within the statute (General Laws of Vermont, § 5173), the jury was justified in finding that it did not perform its statutory duty. In such circumstances, and passing by some questions raised as to the reception and exclusion of testimony, the important remaining questions would be whether the court erred (1) in charging as stated, supra; and (2) in failing to direct a verdict because plaintiff, as matter of law, was guilty of contributory negligence.

We do not find it necessary to discuss the latter question at length, because we think on the evidence that the question of contributory negligence was one of fact for the jury, although we shall point out the necessity of adhering to settled Vermont law in charging the jury on this point.

[1] 1. The first question is whether the word "road," in the Vermont statute, means private road or public highway. It will be noted that the words used are "a road or street." No one would seriously contend that "street" meant other than a public highway. "Street" is defined, for instance, in the Standard Dictionary as "a public way * * * in a city, town, or village. * * *" As said in Matter of the Application of Woolsey, 95 N. Y. 135, 140:

"In common parlance, the word * * * is supposed to relate entirely to the avenues and thoroughfares of cities and villages, and not to roads and highways outside of municipal corporations. * * *"

While this question is taken from a case which construes a provision of the New York Constitution, the definition, supra, is commonly accepted both in popular understanding and when used in statutes or ordinances. See, also, 7 Words and Phrases, p. 6684 et seq. It is plain, therefore, that the word "streets," as used in the Vermont statute refers to public highways within the corporate limits of cities, villages, or other municipal corporations. It was necessary, therefore, to refer in the statute also to those highways which were outside of municipal corporations in what may be called country sections of the state. Remembering that "streets" referred to public highways, within a municipal corporation, the rule of noscitur a

sociis applies to the word "road," as indicating a public and not a private road.

If any other meaning were intended, it would be normally expected that the statute would have read, "a public and private road." A statute of North Dakota of similar character was construed in Reynolds v. Great Northern Ry. Co., 69 Fed. 808, 16 C. C. A. 435, 29 L. R. A. 695. In that case, Judge Sanborn, in a thorough and comprehensive opinion, sets forth the reason leading to the conclusion that the word "road" in such a statute means a public road or highway. In addition, it may be suggested that it is hardly to be supposed that the Legislature of Vermont would put on a railroad the burden of ascertaining each and every private road along its operated right of way. The owner of property for his own convenience might make and open a private road, and, if the statute were construed to mean "private road," then its obligations would at once come into play, even though the railroad would have no information as to the existence of the road. It is difficult to conclude that such a responsibility would be placed upon the railroad, at its peril, in the absence of clear language in the statute. Many cases have been cited in support of both contentions; i. e., that "road," in this statute, meant a public highway, and per contra meant a private road; but we agree with the views expressed by Judge Sanborn.

In the case at bar, the Vermont courts have not construed this statute, and therefore we have examined the various Vermont statutes called to our attention, in order to ascertain whether these statutes invite a different conclusion than has just been stated. In our opinion, the whole trend of the Vermont statutes dealing with highways and roads is that those two words are synonomously and alternatively used. Thus section 32 of General Laws reads:

"*Highway; Road.* The word 'highway' or 'road' shall include bridges thereon."

## Section 4480 reads:

"When application by petition is made to the county or Supreme Court, to discontinue a *highway* laid by commissioners appointed by either of such courts, which has not been built agreeably to the orders of such court, the petition shall be served on one or more of the original petitioners for the laying of *such road*, as well as on one or more of the selectmen of the town or towns through which the *road* is laid, or the same, on motion, shall be dismissed. * * * "

Similar synonymous use of these words is found in sections 4485, 4578, and 4579. It is unnecessary to prolong the illustrations; for it appears quite clear that "road" means a public highway, when used in statutes having to do with the laying out of roads, and the rights and obligations which spring therefrom and from the use of roads for purposes of travel or otherwise.

[2] 2. The next question is whether there was evidence which justified the court in submitting to the jury the question as to whether or not the road here concerned was a public highway. In some circumstances, whether or not a road has been so used as to become a public highway is a question of fact. It is clear from the evidence

that the road was originally built for the benefit of a private mill owner, and so continued when the village of Lyndonville bought the property, which has since been used for an electric light plant. There is evidence that some members of the public used the road in order to see the falls and for picnicking, fishing, or boating. The rule in respect of such use is well stated in 8 R. C. L. 890, 891, where it is pointed out that the acts and declarations of the owner of property relied on to establish dedication must be convincing and unequivocal, and that the intention to appropriate to the general use of the public must be clear. Citing R. C. L., supra, the Supreme Court of Vermont in Gore v. Blanchard, 118 Atl. 888, recently decided and not yet [officially] reported states:

"But no such presumption arises where, as in the * * * case it merely appears that some of the inhabitants of a certain locality, even with the knowledge of the landowner, travel over a small, worthless strip of uncultivated, uninclosed land for the purpose of getting ice in the winter and occasionally for the purpose of fishing."

[3] Fundamentally, however, under the highway system of Vermont, adverse user by the public is wholly ineffective to establish a public highway if the town authorities have refused or failed to sanction the adoption. In Way v. Fellows, 91 Vt. 326, 329, 100 Atl. 682, 684, the court said:

"While adverse user by the public for the necessary period may be evidence of an adoption, it is wholly ineffective, under *our highway* system, to establish a public highway, if the town authorities have refused or failed to sanction the adoption. Our decisions relating to the dedication of highways are in point. The question frequently arose under the highway damage law, and there it was held that neither a dedication of land to the public for a highway, nor the use of it as such by the public, was sufficient to impose upon the town the duty to keep it in repair, *unless it had been accepted and adopted by the proper town officers.*" (Italics ours.)

See, also, Bacon et al. v. Boston & Maine R. R. Co. et al., 83 Vt. 421, 436, 437, 76 Atl. 128, and Blodget v. Royalton, 14 Vt. 288, 295.

It must be remembered that, in determining whether or not a road or way is a public highway, the essential feature is the responsibility of the town or other governmental subdivision in which the road is situated. If the road is a private road, the local government ordinarily has no responsibility to repair the same, and hence no responsibility for accidents which may happen because of the negligence of the local government. If, on the other hand, the road or way is a public highway, then certain statutory and common-law liabilities are placed upon the local government. On the evidence in this case, the test really is whether, if at any time some accident had occurred through failure to keep this road in proper condition, an action would lie against the town. The acts upon which plaintiff relied to show adoption were casual, and occurred at odd times over a long period of years. They consisted, in the main, of some occasional work by the road commissioner; but with only one exception is there any evidence that the selectmen either had knowledge of the act, or that they took any official action or course which can be characterized as in any manner evidence of adoption. The single exception is that

Mr. Hall petitioned the town for a road to his house, which is in the vicinity. The town did part of the work, and Hall did part gratuitously. The road to Hall's house, however, comes on the road in controversy at the westerly end near the highway. It is an entirely different road. If there was any dedication, it was by Hall, and not by the owners of the road. Hovey, who was the first road commissioner of the town of Lyndon, testified as to one instance where he worked the road with a road machine:

"Only the piece that goes down a little ways from the Lyndon road, and the hill that went up to the Wilder house, or the Hall house, now called."

Hovey did not testify as to the extent or cost of the work, nor whether he had authority from the town officials to do the work. Clifford, another road commissioner, testified that he paid Hall for one-half day's work for putting some dirt under the gate in the road on one occasion. Hall was paid by Clifford, the road commissioner, with a town order; but there is no testimony as to what knowledge, if any, the selectmen had, or as to the technical character of this town order, or whether the selectmen authorized the same, or whether this was merely out of such appropriation as may have been made for the use of the road commissioner. There is also some testimony by another commissioner as to a snow roller, which was used occasionally on this road; but it does not appear whether the use of the snow roller was a friendly service or in pursuance of authority of the selectmen.

[4] As opposed to this and a few other odd instances, occurring over a very long period of years, there is overwhelming testimony which must lead to the conclusion that the road was never adopted by the town authorities, and thus was never dedicated and never became a public highway. We do not, of course, rest our conclusion upon the testimony in behalf of defendant upon the proposition. Giving to the testimony of the plaintiff every favorable inference, it fails in the aggregate to disclose any evidence, in legal acceptation, that the road in question was a public highway. It was error, therefore, to submit that question to the jury, and that error was not cured by the submission of the first question.

[5] 3. In view of the foregoing, it must be plain, also, that the part of the charge, quoted supra, was highly prejudicial to defendant, because the court charged as matter of law that it was the duty of defendant to ring the bell, etc., and, if the jury found that defendant failed so to do, then that their verdict must be for plaintiff. What has been said above does not, however, deprive plaintiff of its cause of action upon the theory that the defendant violated its common-law duty, so that its alleged negligence was the proximate cause of the death of plaintiff's intestate. The charge of the court on this branch of the case, beginning with the words, "Regardless of the statute," and ending with the words, "the burden of proof is on the plaintiff on this question," was clear and admirably put, and sound with two exceptions:

(a) That part of the charge wherein the court stated "that defendant's rule that an engine should not be run faster than 35 miles an hour" was error. In this case, the rule of the railroad company as to speed should not have been received in evidence. Whether or not a speed in excess of 35 miles an hour was evidence of negligence was a fact, with other facts, to be determined by the jury. This rule was a precautionary rule for the guidance of the employés of the railroad. The circumstances in this and other cases might be such that a speed in excess of 35 miles might have no relation whatever to the question of negligence. Testimony as to a breach of a rule of the railroad for government of its own employés is quite different from testimony as to the breach of a statute or an ordinance, which has been generally held as furnishing some evidence of negligence, to be considered by the jury, together with all the other facts and circumstances.

[6] (b) The court also stated that the jury could take into consideration "the fact that engine was equipped with a whistle and bell for the purpose of giving warning of its approach." That fact was, of course, immaterial. Because the engine was thus equipped, it does not follow that the failure to use the bell or whistle was a breach of duty in the circumstances. This instruction might lead the jury to believe that the equipment referred to was evidence of the duty of the railroad to use such equipment. To determine the negligence of defendant, the jury, of course, may consider the failure to ring the bell or blow the whistle, but not the mere fact that the engine was equipped with a bell and a whistle.

4. It is desirable also to call attention to the court's refusal to charge the following request:

"The general rules applicable in cases of this kind are well settled. One who is about to cross a railroad track must look and listen for an approaching train, and must stop to listen, if that is necessary to enable him to listen effectually. If his vision is obstructed, he must be specially vigilant as regards his hearing. If circumstances are such that his hearing cannot be relied upon, he must look with especial care. He must continue to look and listen as he approaches the track, until the last moment when the discovery of a train would avail for his protection."

This request was in accordance with Vermont law, as held in a long line of cases. Carter v. Central Vt. R. R. Co., 72 Vt. 190, 47 Atl. 797; French v. Grand Trunk Ry. Co., 76 Vt. 441, 58 Atl. 722; Shumm's Adm'x v. Rutland R. R. Co., 81 Vt. 186, 69 Atl. 945, 19 L. R. A. (N. S.) 973; Flint's Adm'r v. C. V. Ry. Co., 82 Vt. 269, 73 Atl. 590; Labelle v. C. V. Ry. Co., 87 Vt. 87, 88, 88 Atl. 517; Hazen's Adm'r v. Rutland Ry. Co., 89 Vt. 94, 94 Atl. 296; Harrington v. Rutland Ry. Co., 89 Vt. 112, 94 Atl. 431; La Mountain, Adm'x, v. Rutland R. R. Co., 93 Vt. 21, 106 Atl. 517.

[7] The federal courts, in order to assure uniformity and harmony of decision in respect of a question of this kind, will follow the law as laid down by the highest state court in the jurisdiction in which the negligence occurs. The proposition is exceedingly well stated by Judge Walker in Roberts v. Tennessee Coal, Iron & R. Co., 255 Fed. 469, at page 473, 166 C. C. A. 545.

[8, 9] To summarize briefly: If on retrial there be no testimony in addition to that presented in this record, the case must rest upon the common-law duty of defendant, and the statute (section 5173) will be inapplicable. Of course, plaintiff, in order to show whether or not defendant was negligent, may introduce testimony showing the nature of the road, its situation, and the surrounding situs, the amount of travel over the road at any time since the railroad began running its engine or trains there, and the knowledge of the railroad as to the existence of the road and any other facts thus relevant. The burden of proving contributory negligence under the practice in the United States courts is, of course, upon the defendant, but defendant will be entitled to the instruction above referred to.

Judgment reversed.

MANTON, Circuit Judge (dissenting). The highway or road, over which the deceased was proceeding, leads from the state highway in Lyndon, and crosses the railroad tracks just before reaching an electric light plant owned and operated by the village of Lyndonville. The deceased and a fellow workman were employed by the village at the electric light plant, and in the performance of their duties drove across the tracks with an auto truck loaded with ashes, which were dumped in the roadway, and then were returning, crossing the track, when they were struck by the plaintiff in error's engine. The accident occurred at about 2:15 p. m. The physical situation surrounding this crossing made the approach to the crossing of the track very dangerous. There is a sharp, obscured curve north of the crossing. There is an embankment, resulting from a cut through the rock at this curve, through which the engine passed. No automatic bell was maintained at the crossing. There is evidence that for some years prior to 1905 there was a sign, "Look Out for the Cars," near the crossing, but since then there has been no such warning. The roadway across was planked in between the rails as well as on the outside. The road was kept in repair by the town of Lyndon for more than 40 years prior to the accident. At this time there was a gate at the fence that enclosed the railroad's right of way. Long use by the public and adoption by the town authorities may be established by any evidence that shows a town has kept the road in repair. Whitney v. Town of Essex, 42 Vt. 520; Brown v. Swanton, 69 Vt. 53, 37 Atl. 280. "All highways do not appear of record. They may be established by dedication, use, and adoption by the town, and nothing appear of record" says the Supreme Court of Vermont in Ladd v. Waterbury, 34 Vt. 426.

Was there sufficient, or, indeed, any, evidence which required that the question of whether or not the road was a highway by dedication, use and adoption to be submitted to the jury? The trial court submitted for special finding, the following question: "Was the road leading over the crossing a public highway?" The jury answered: "Yes." If there is any evidence to support this finding, within the rules of law prevailing in Vermont, then the question of whether or not the road was a public highway, as discussed in the prevailing

opinion, is interesting, but not for our solution, for it became a question of fact for the jury. Likewise if such finding has evidence to support it, the charge of the trial judge, said to be erroneous in the prevailing opinion was a proper instruction, for the statutes of Vermont require (G. L. 5173):

"A bell of at least thirty pounds weight shall be placed on each locomotive engine, and be rung at the distance of at least eighty rods from the place where the railroad crosses a road or street at grade, and be kept ringing until it has crossed such road or street, or the steam whistle may be blown instead of ringing such bell."

There is evidence that, after the old Wilder paper mill was discontinued, a town electric light plant was built in its stead, and this highway or road was its sole avenue of approach to the state highway. In addition to serving the electric light station, it was the only means of access to three residences, Woods, Cheney, and Wilder. All were occupied at the time of this occurrence. It was always an open road, except a gate was put across by the railroad company along the line of its fence in 1900. This fence was a requirement of railroads under the Vermont statutes. G. L. Vt. 5195. Many crossings in rural communities have gates of like character. Repairs were made to this road by the highway commissioners, such as using a road scraper and plowing the snow off in the winter. Road Commissioner Clement says, "It is a comfortable highway," and had been "used by the public for a number years," and that he made such repairs as were necessary on the road, and it showed signs of long usage. Hovey, a road commissioner for nine years, worked on that part of the road extending from the railroad track to the Wilder home, and also that portion "which extended from the main highway down around, and ran along parallel with the railroad track, and past the gate, and up to the Hall house." Hall said that he saw Road Commissioner Clifford, four or five years before the occurrence, obtain dirt "from the gravel bank on the state highway, and use it to repair a washout under the gate on both sides, clear to the rails."

Clifford, road commissioner in 1917, 1918, and 1920, employed one Hall to repair the road to the electric light station, and paid him by town order for filling with "lime and dirt" a hole which had been gullied out under the gate in the pitch between the right of way fence and the crossing. Mr. Way, another commissioner, repaired a washout between the gate and the railroad track, and worked with a road machine from the gate to the culvert near the Woods house on more than one occasion. It was said that east of the railroad tracks the soil of the road was firm, with very good drainage, and never needed any repairs. Way says that he "rounded the roadbed with a road machine from the Hall (Wilder) house down to the main highway." This road was used for about 48 years. For 7 or 8 years before the time of trial, the town rolled snow crossing to the flat east of the crossing, and Hall, who lived near the crossing and east of it, said at least a motor truck a day used the road crossing, and at times four or five. The road was used in the summer time by picnickers and fishermen, who went to a river nearby and east of the

crossing for pleasure. Both Road Commissioners Cheney and Ranney gave testimony as to repairs made to the road. A former engineer of the railroad company said that it was customary for engines to blow for this crossing when passing. This evidence was ample to raise a jury question as to the dedication of the road and its use and adoption as a public highway. Its adoption by the town is clear, from the repairs made to it, and .the care exercised by the railroad company in the use of a sign in former years, a gate in recent years, and a signal to wayfarers was some evidence for the jury. A dismissal, if granted, for want of proof, after hearing such evidence, could not be sustained. It was sufficient proof to satisfy men of the community familiar with the kind of repairs given to country roads to pronounce this a highway by dedication and use by the town.

If it was a highway, as found, then, as the court charged, it was the duty of the plaintiff in error to ring a bell or blow the whistle at this crossing in accordance with the statute, and, if the jury found a failure to ring the bell or blow the whistle was the cause of the accident, their verdict must be for the defendant in error, providing the deceased was free from contributory negligence. Indeed, the statute in question is part of a general act for signal or warning at railroad crossings. The first (section 5172) used the words "public highway," where it requires warning boards at crossings and provides:

"A railroad corporation shall maintain at every public highway or street where the same is crossed by its railroad at grade, warning boards of such description as the Public Service Commission approves."

And the next (5173) is the act in question requiring the signal, and it used the word "road." Both sections are part of the same act passed at the same session. It is therefore apparent that the Legislature intended the distinction between "highway" and "road" as argued for in this opinion. "Road," according to Webster's Dictionary, is synonymous with "way, highway, street, lane, pathway, route, passage across." It is commonly referred to as a way for horses and carriages. Wherever any other meaning is intended to be given to a road by the statutes of Vermont the phrase "public road" or "highway" is used. Laws Vt. 1797, c. 26, pp. 347, 360; Rev. St. Vt. 1840, c. 20; Comp. St. Vt. 1851, c. 22; Vt. St. 1894, c. 154; Pub. St. 1906, c. 170; and G. L. 1917, c. 191.

Constantly the word "road" has been used where a public road is not necessarily meant. The phrase "a road used as a public highway" must mean to the legislators that the word "road," standing alone, is not the equivalent of a highway in its legal sense. While we are not referred to any authoritative decision on the point by the highest court of Vermont, other states have had occasion to pass upon statutes where the word "road" is used in their respective statutes. In Texas a similar statute as to a required signal for a railroad crossing was considered, and it was there held that "road" did not mean a highway. I. & G. N. Railroad Co. v. Jordan, 1 White & W. Civ. Cas. Ct. App. § 859. See, as to California, Orcutt v. Pacific Ry. Co., 85 Cal. 291, 24 Pac. 661; Vance v. Atchison, T. & S. F., 9 Cal. App. 20, 98 Pac. 41; Maine, Windham v. Cumberland

Co., 26 Me. 406; Massachusetts, Commonwealth v. Gammons, 40 Mass. (23 Pick.) 203; Jaquith v. Richardson, 49 Mass. (8 Metc.) 215; Nebraska, Chicago, B. & Q. R. Co. v. Metcalf, 44 Neb. 848, 63 N. W. 51, 28 L. R. A. 824; Kentucky, L. & M. Ry. v. Bodine, 109 Ky. 509, 59 S. W. 740, 56 L. R. A. 506.

The statute is absolute, requiring the warning referred to, and if the "road" means a way for horses and carriages or automobiles, there was the certain duty imposed upon the railroad company to sound a whistle or ring a bell. An admitted failure so to do proved a negligent act as a matter of law. The charge of the learned trial judge was therefore correct.

We are in accord in support of the defendant in error's claim that the evidence required the issues of the deceased's freedom from contributory negligence to be submitted to the jury. As to the requested instruction by the plaintiff in error on the law of contributory negligence, no error was committed in the refusal. The request correctly states the rule of law, but the trial judge had fully and properly instructed the jury as to contributory negligence. It is not error to refuse to charge the same rule couched in different phrase.

For these reasons, the judgment should be affirmed, and I must therefore dissent from the judgment about to be announced.